■ In the Matter of JESSICA MM., Alleged to be a Permanently Neglected and Severely Abused Child. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; LAURIE MM. et al., Appellants.—Mikoll, J. Appeal from an order of the Family Court of Clinton County (Feinberg, J.), entered August 12, 1985, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondents' child a permanently neglected and severely abused child, and terminated respondents' parental rights.

In August 1983, Dr. Linda Johnson of the City of Plattsburgh, Clinton County, made a report to the State Central Register in Albany concerning respondents' infant daughter who, after having been brought to a hospital, was found to be suffering from multiple fractured ribs, a broken arm and pneumonia. The infant, born in June 1983, was at first hospitalized and then placed in a foster home pursuant to a Family Court order of temporary removal.

A petition was thereafter filed pursuant to Family Court Act article 10 and, in November 1983, the infant was adjudicated to be abused and neglected after a hearing. As a result of that determination, Family Court ordered that the infant remain in foster care for an initial period of 18 months and that various services be provided to respondents so that she could be returned to them. Respondents signed a so-called "service contract" with a caseworker in petitioner's office. Under this agreement, respondents agreed to attend a Mental Health Clinic program and a parenting class. They also agreed to visit the infant twice a week at scheduled times at her foster home and to follow the suggestions of the foster mother on ways to interact with the infant. Additionally, they agreed to call the caseworker and the foster mother if they could not make a visit.

Approximately one year later, petitioner evaluated the progress made by respondents and decided to commence the instant proceeding for a permanent termination of respondents' parental rights pursuant to Social Services Law § 384-b. In December 1984, respondents were told of petitioner's decision. A petition, alleging that the infant was permanently neglected and severely abused, was filed in May 1985. A fact-finding

hearing was held at which evidence, including the testimony of caseworkers, expert witnesses, respondents and others, was received. Family Court found that, based on the record, the infant was permanently neglected and severely abused. The court noted that petitioner had diligently provided services to respondents but that they had shown no motivation to be parents to the infant. Thereafter, a subsequent dispositional hearing was held. Testimony of a clinical psychologist, Dr. Margaret Santora, and of others, including respondents, was received. At the conclusion of that hearing, Family Court terminated respondents' parental rights. This appeal by respondents ensued.

Initially, respondents argue that proof of their permanent neglect was lacking because petitioner failed to diligently provide aid of the sort designed to overcome respondents' transportation and telephone problems. They assert that their frequent absences on visitation days were due to these problems. Respondents further contend that there was conflicting, rather than convincing, evidence of their progress in the parenting programs, that they complied with the service contract and that they were not informed nor did they understand that they would regain custody of the infant only if they complied with the service contract. These arguments lack merit.

An agency must prove by clear and convincing evidence *(Santosky v Kramer,* 455 US 745, 769; *Matter of Michael B.,* 58 NY2d 71, 73), that it has exercised diligent efforts to encourage and strengthen the parental relationship *(Matter of Jamie M.,* 63 NY2d 388, 390). The agency, however, is not charged with guaranteeing that a parent will succeed in overcoming his or her problems *(Matter of Sheila G.,* 61 NY2d 368, 385). "[A]n agency that has embarked on a diligent course but faces an utterly un-co-operative or indifferent parent should nevertheless be deemed to have fulfilled its duty" *(id.; see, Matter of Star Leslie W.,* 63 NY2d 136, 144). However, once the agency makes diligent efforts to provide certain services to the parents *(see,* Social Services Law § 384-b [7] [f]), the parents have a duty to take the initiative and responsibility to plan for the future of their child *(Matter of Jamie M., supra,* p 393). The plan formulated by the parents must remove destructive tendencies from their lives while providing for the financial, educational and housing needs of their child *(Matter of Ronald YY.,* 101 AD2d 895, 896-897; *see, Matter of Nicole TT.,* 109 AD2d 919, *lv denied* 66 NY2d 601).

In the case at bar, there was clear and convincing evidence

both that, despite zealous and diligent efforts by petitioner, respondents failed to take advantage of services proffered by petitioner and that they failed to plan for the infant's future. Petitioner provided respondents with parenting classes, counseling and opportunities to learn from the infant's foster mother, access to a vocational program for the infant's father and tutoring from literacy volunteers for the infant's mother. However, respondents failed to avail themselves of any of these programs on a consistent basis despite repeated letters and phone calls from their caseworkers. These same caseworkers also offered transportation for visitations. Yet, respondents frequently did not request transportation until the last minute when it was too late to arrange it. While respondents did not have a telephone, that cannot be said to have been the real cause of their failures to make scheduled visitations and to follow through on parenting and other improvement programs. Furthermore, the record discloses that respondents also failed to plan for the infant's future. The evidence thus shows that respondents were provided with substantial opportunities for education and rehabilitation but never availed themselves of these services.

Respondents next argue that there was no proof of severe abuse of the infant as required under Social Services Law § 384-b (8) (a). They contend that there was no evidence that she suffered any serious physical injury as defined in Penal Law § 10.00 (10), nor was any proof offered to establish that respondents evinced a depraved indifference to human life. They also assert that the infant had incurred no serious or protracted disfigurement and that there was no proof that she suffered a substantial risk of death. Rather, respondents maintain that the evidence showed that there was only a possibility of disfigurement or protracted impairment of health. This line of argument also is without merit.

The record contained the required convincing evidence of the infant's severe abuse by virtue of admissions made by respondents at the initial proceeding when the infant was placed in foster care. The testimony of Dr. Herbert J. Koerner, a radiologist of 25 years, was evidence of the severity of her injuries. He testified that the numerous rib fractures which the infant had suffered could have been life threatening because of the possibility of spleen or liver damage. He described the force necessary to cause such severe injuries and numerous fractures and said his paramount concern was that the infant might be a battered child. He continued that, if that were the case, there was a critical concern over the

likelihood of future abuse and a risk of injury to the infant's head. Respondents' explanations of the infant's injuries—that she fell off a chair, that she was dropped and hit a television stand and that she was yanked out of her bassinet—were not consistent with the evidence and leads to the conclusion that a certain recklessness was exhibited by respondents in their handling of this infant. Of great significance, in our view, is the testimony of Santora, who stated with respect to this issue, that respondents never admitted that they had a problem.

Finally, respondents contend that the termination of their parental rights was too harsh a remedy because, in their interpretation of the evidence, the record disclosed that they were making progress toward becoming competent parents. This contention is rejected. The standard in a dispositional hearing for the exercise of a court's discretionary power to either terminate the parental relationship or grant a suspended judgment, after a finding of permanent neglect or severe abuse, is the best interest of the child (Social Services Law § 384-b [8] [c]; *Matter of Star Leslie W.,* 63 NY2d 136, 147, *supra).* Termination of respondents' parental rights was clearly in the infant's best interest. Respondents displayed little warmth toward the infant. They lacked the energy and motivation to be parents. They never acknowledged their role in the infant's injuries and as, Santora testified, without an acknowledgment of a problem, there was little likelihood for a successful cure. To permit a return of the infant to respondents would create an unwarranted risk and would have been an improvident exercise of discretion on the part of Family Court. Accordingly, Family Court's order should be affirmed.

Order affirmed, without costs. Mahoney, P. J., Kane, Casey, Mikoll and Levine, JJ., concur.