■ In the Matter of SONIA H. ANGEL GUARDIAN HOME, Respondent; EDITH M., Appellant.—In a proceeding pursuant to Social Services Law § 384-b to terminate parental rights, the respondent mother appeals from a dispositional order of the Family Court, Queens County (Torres, J.), dated November 7, 1990, which, after a hearing, terminated her parental rights and committed the guardianship and custody of the child to the Angel Guardian Home pending her adoption by foster parents.

Ordered that the order is affirmed, without costs or disbursements.

The petitioning agency has met its burden of establishing by clear and convincing evidence that despite its "diligent efforts" to strengthen the parental relationship, the respondent mother permanently neglected her daughter Sonia by failing to make realistic plans for her safe future (see, *Matter of Star Leslie W.,* 63 NY2d 136, 140; *Matter of Sheila G.,* 61 NY2d 368, 373; *cf., Matter of Erica J.,* 154 AD2d 595).

Sonia, now 11 years old, was first placed in foster care when she was less than a year old, after a physical examination revealed that she was suffering from multiple skull fractures and three older, healed rib fractures. Sonia's parents were unable to offer an adequate explanation for her injuries, and the Family Court subsequently entered a finding of neglect against them based upon their admission that they had failed to provide Sonia with proper medical care. Although Sonia was returned to her mother on April 24, 1981, a second child protective proceeding was commenced against her approxi-

mately four months later when Sonia was hospitalized for second degree burns on her hands. Following a hearing, a finding of child abuse was entered against the mother, and on January 6, 1983, Sonia was placed in the custody of the Commissioner of Social Services for a period of up to 18 months.

During the initial placement period, the petitioning agency instituted weekend visitation between Sonia and her parents in order to further its goal of ultimately reuniting the family. Weekend visitation was terminated, however, in November of 1983, when Sonia was returned from a visit suffering from cigarette burns on her neck and over her eyebrow. Sonia stated that her father had burned her, and in view of her injuries, her placement was extended and supervised visitation implemented. Sonia's natural father died in 1987, and, following extensive hearings, in November of 1990 the Family Court terminated the mother's parental rights on the ground that she had permanently neglected Sonia by failing to adequately plan for her future.

Contrary to the mother's contention, the Family Court's finding that she permanently neglected Sonia is supported by the testimony adduced at the fact-finding hearing. In planning for the future of a child, "[a]t a minimum, parents must 'take steps to correct the conditions that led to the removal of the child from their home' " (Matter of Nathaniel T., 67 NY2d 838, 840, quoting from Matter of Leon RR., 48 NY2d 117, 125). This parental obligation necessarily includes addressing and overcoming specific personal and familial problems which initially endangered or proved harmful to the child, and which may in the future endanger or possibly harm the child (Matter of Leon RR., 48 NY2d 117, supra; Matter of Travis Lee G., 169 AD2d 769; Matter of Regina M.C., 139 AD2d 929; Matter of Jessica MM., 122 AD2d 462, 465; Matter of Ronald YY., 101 AD2d 895). A parent's efforts to remedy the conditions which resulted in removal of the child must consist of more than a mere denial of all culpability or responsibility for past conduct.

The record supports the Family Court's determination that the mother has never accepted her responsibility or culpability for Sonia's past injuries, and has shown no change in her behavior or thinking which would ensure Sonia's safety were she to be returned to her. The mother's repeated declarations of love and her professed desire for Sonia's return, without any insight into her own conduct, and without the acceptance of culpability for the serious injuries previously inflicted upon

Sonia, are not genuine steps toward a realistic plan for Sonia's safe future. Moreover, although the mother, at agency prompting, participated in some counseling and therapy, her token compliance with the agency's efforts and her desire for Sonia's return do not adequately signal the necessary change (see, Matter of Nathaniel T., supra, at 841-842; Matter of Travis Lee G., supra).

The record additionally supports the Family Court's findings that the agency complied with the statutory mandate to make diligent efforts to encourage and strengthen the parental relationship (see, Social Services Law § 384-b [7] [a], [f]). An agency is required to "mold its efforts in the context of and in recognition of a parent's individual situation" (Matter of Anita "PP", 65 AD2d 18, 22). Such efforts " 'may encompass, under the appropriate circumstances, a duty on the part of the agency to direct the natural parent toward * * * treatment designed to remedy the obstacles barring family reunification' " (Matter of Ronald YY., 101 AD2d, supra, at 897, quoting Matter of Star A., 55 NY2d 560, 564). The mother suffers from psychological and emotional problems, and it was thus appropriate for the agency to conclude that seeking assistance for these problems was a priority. Although the agency made several referrals to therapy and counseling, the mother ceased to cooperate with the agency's efforts to obtain further assistance for her after her former therapist died. The mother merely advised the agency that she was no longer in need of such services. A parent's failure to utilize available medical, psychiatric or psychological services may be considered by the court in determining whether a parent has planned for the child (see, Social Services Law § 384-b [7] [c]; Matter of Kevin PP., 154 AD2d 739), and the mother's premature withdrawal from therapy further supports the court's finding that she failed to adequately plan for Sonia's return.

We have considered the mother's remaining contentions and find them to be without merit. Bracken, J. P., Harwood, Eiber and O'Brien, JJ., concur.