274

[634 NYS2d 807]

In the Matter of CHARLENE TT. and Others, Children Alleged to be Permanently Neglected. TOMPKINS COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MARY UU., Appellant. (Proceeding No. 1.)

In the Matter of CHARLENE TT. and Others, Children Alleged to be Permanently Neglected. TOMPKINS COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; GEORGE UU., Appellant. (Proceeding No. 2.)

Third Department, December 7, 1995

## APPEARANCES OF COUNSEL

*Susan C. Kirby,* Jacksonville, for Mary UU., appellant.

*Charles T. Currey,* Ithaca, for George UU., appellant.

*John Rowley,* Ithaca, for respondent.

*Bernice R. Dozoretz, Law Guardian,* Binghamton, for Charlene TT. and others.

## OPINION OF THE COURT

CREW III, J.

Respondent Mary UU. (hereinafter the mother) is the biological mother of four children, Charlene (born in 1980), Lisa and George (hereinafter Georgie), who are twins (born in 1982), and Ivan (born in 1984). Respondent George UU. (hereinafter the father) is Charlene's stepfather and the biological father of Lisa, Georgie and Ivan. In January 1992, an abuse and neglect petition was filed against the mother and the father alleging physical and sexual abuse by the father and inadequate guardianship by the mother. Ultimately, Family Court (Friedlander, J.) found, *inter alia,* that both respondents had neglected Charlene and made a derivative finding of neglect with respect to the other children *(see,* Family Ct Act § 1046 [a] [i]). As to the allegations of sexual abuse by the father, although Family Court did not find that the father had sexually abused Charlene, the court nonetheless ordered the father to, *inter alia,* follow the recommendations of the Sex Offender Ad-

diction Retraining (SOAR) program sponsored by the Tompkins County Mental Health Clinic and directed that the order of protection entered against the father remain in place. The children were placed in petitioner's custody for a 12-month period commencing October 30, 1992.

Thereafter, in August 1993, petitioner commenced the instant proceedings against respondents alleging that Charlene, Lisa, Georgie and Ivan were permanently neglected children and seeking to terminate respondents' parental rights.[1] Following a lengthy hearing, at which respondents appeared and testified, Family Court (Frawley, J.H.O.) found that petitioner had established, by clear and convincing evidence, that respondents had permanently neglected their children and thereafter terminated respondents' parental rights. These appeals by respondents followed.[2]

It is well settled that "[t]he threshold inquiry in any permanent neglect proceeding is whether the petitioning agency has discharged its statutory duty to exercise diligent efforts to encourage and strengthen the parental relationship" *(Matter of Shannon U.,* 210 AD2d 752, 753, *lv denied* 85 NY2d 807; *see, Matter of Elizabeth Q.,* 216 AD2d 628, *lv denied* 86 NY2d 706). The diligent efforts requirement, in turn, compels the petitioning agency to attempt reasonable and practical means to "encourage a meaningful relationship between the parent and his or her children and includes providing counseling, making suitable arrangements for visitation with the children, providing services and other assistance aimed at ameliorating or resolving the problems preventing discharge of the children to the parent's care, and keeping the parent informed of the children's progress and development" *(Matter of Shannon U., supra,* at 753; *see,* Social Services Law§ 384-b [7] [f]). In so doing, the petitioning agency must tailor its plan to fit each parent's individual circumstances *(see, Matter of Sonia H.,* 177 AD2d 575, 577), and the plan ultimately adopted by the agency must be realistic *(see, Matter of Jessica UU.,* 174 AD2d 98, 100-102; *see*

1. Shortly thereafter, petitioner filed a petition for extension of placement and respondents opposed petitioner's application. Ultimately, Family Court (Frawley, J.H.O.) granted a temporary extension until December 15, 1993, apparently pending resolution of the permanent neglect proceedings.

2. Although the father's notice of appeal appears to predate the order from which his appeal has been taken, in the exercise of our discretion and in the interest of justice, we will treat the premature notice of appeal as valid and address the merits *(see,* Family Ct Act § 1118; CPLR 5520 [c]; *Matter of Charles BB.,* 179 AD2d 904, 905).

*also, Matter of Rita VV.,* 209 AD2d 866, 867). Based upon our review of the record as a whole, we are unable to conclude that the plan formulated by petitioner indeed was realistic under the circumstances and, as such, we are of the view that petitioner failed to meet its statutory duty to exercise diligent efforts to strengthen the relationship between respondents and their children.

The record reveals that the primary focus of petitioner's plan was to address the sexual abuse allegedly inflicted upon Charlene by the father. Specifically, petitioner's goals for the mother included acknowledging Charlene's alleged abuse, participating in a group for nonoffending parents of sexually abused children, establishing a residence separate and apart from the father and protecting the children from him. Similarly, petitioner's goals for the father included undergoing a sex offender evaluation and following the treatment recommendations, if any, and admitting that he sexually abused Charlene.

Plainly, where a parent has been found to have sexually abused his or her child, requiring that parent to undergo evaluation and treatment is entirely appropriate *(see, e.g., Matter of Abby Gail E.,* 191 AD2d 696) and, under such circumstances, the parent's continued and persistent failure to participate in counseling and/or admit and confront such abuse may form the basis for the termination of his or her parental rights *(see, e.g., Matter of Kayte M.,* 201 AD2d 835, 836, *lv denied* 83 NY2d 757). Additionally, where such abuse has been established, the petitioning agency is not required "to accommodate [the parent's] refusal to acknowledge the sexual abuse by formulating an alternative plan" *(supra,* at 836). Here, however, the father was not found by Family Court (Friedlander, J.) to have sexually abused Charlene, nor does it appear that he was prosecuted and convicted for any such offense under the Penal Law. Indeed, the father has steadfastly denied that any such abuse occurred. In our view, absent an adjudication, conviction or admission, requiring respondents to admit the father's alleged sexual abuse of Charlene and receive counseling for such abuse simply was not a realistic goal *(see generally, Matter of Jessica UU.,* 174 AD2d 98, 101-102, *supra).*

In reaching this conclusion, we wish to emphasize that we have no quarrel with the directive, made by Family Court (Friedlander, J.) in the abuse and neglect proceeding pursuant to Family Court Act article 10, that the father undergo a sex offender evaluation. Although Family Court apparently was of

the view that there was insufficient evidence to corroborate Charlene's statements regarding the alleged abuse, Family Court's decision in that matter provides a well-reasoned basis for requiring the father to undergo such an evaluation and, as such, we cannot say that Family Court abused its discretion in this regard.[3] Similarly, in view of the testimony offered by the clinic supervisor for the SOAR program concerning the results of the father's evaluation and his perceptions regarding sexual activity between children and adults, we cannot say that further efforts at counseling were unwarranted. Moreover, we recognize petitioner's efforts in subsequently referring the father to another treatment program in Chemung County and acknowledge the testimony offered by the father's therapist that he could have benefitted from that program notwithstanding his denial of the allegations of abuse. The record indicates, however, that following the father's unsuccessful completion of the sex offender's program in Chemung County, petitioner's efforts at counseling ceased and no further services were offered to the father.

Although such an approach would be entirely reasonable where there had been a previous adjudication of abuse, we believe that more was required of petitioner under the circumstances present here. In other words, although a sex offender's treatment program certainly is an appropriate form of counseling for an adjudicated offender, where, as here, no such adjudication has been made, we are of the view that the petitioning agency has an obligation to explore other counseling options. Inasmuch as petitioner failed to offer the father any other options, and in view of its insistence that respondents attain what we deem to be an unrealistic goal, i.e., admission of the alleged abuse, we must conclude that petitioner failed to satisfy the diligent efforts standard. Accordingly, the petitions seeking termination of respondents' parental rights must be dismissed, with these matters remitted to Family Court for a de novo hearing regarding custody of the respondents' children, where all appropriate factors, including the fact that the children have been in foster care for almost four years, may be taken into consideration in determining the children's best interest (see generally, Matter of Jessica UU., 174 AD2d 98,

---

3. Apparently, neither respondent appealed from Family Court's order in that proceeding.

102, *supra; Matter of Charmaine T.,* 173 AD2d 625, 626; *Matter of Jonathan D.,* 62 AD2d 947, 948).[4]

MIKOLL, J. P., CASEY, YESAWICH JR. and PETERS, JJ., concur.

Ordered that the orders are reversed, on the law, without costs, petitions dismissed and matters remitted to the Family Court of Tompkins County for further proceedings not inconsistent with this Court's decision.

---

4. In light of this conclusion, we need not address the remaining arguments raised by respondents on appeal, except to note that we do not believe that Family Court erred in admitting into evidence petitioner's redacted case file. The record reveals that respondents were given the opportunity to review the case file prior to the commencement of the fact-finding hearing and that various portions of the file were redacted upon consent. In our view, admission of a redacted case file under these circumstances does not constitute error *(compare, Matter of Leon RR,* 48 NY2d 117, 122-124; *Matter of Christina C.,* 185 AD2d 843, 844-845).