■ In the Matter of MICHAEL U. and Others, Children Alleged to be Permanently Neglected. BROOME COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; GRACE V. et al., Appellants. (And Another Related Proceeding.) [639 NYS2d 1021] —Crew III, J. Appeal from an order of the Family Court of Broome County (Hester, Jr., J.), entered September 27, 1994, which granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate respondents' chil-

dren to be permanently neglected, and terminated respondents' parental rights.

Respondent Grace V. is the mother of the three children who are the subject of these proceedings, Nicole (born in 1990) and Michael and Tiffany (born in 1991). Respondent Frank U. is the father of Michael and Tiffany.[1] Nicole was placed in petitioner's care when she was six months old, and in November 1990 a neglect petition was filed against respondents alleging, inter alia, that they had failed to provide Nicole with adequate medical care. Shortly thereafter, on January 14, 1991, the mother prematurely gave birth to Michael and Tiffany. Based upon, inter alia, the mother's conduct during the birth of her children, Michael and Tiffany were placed in petitioner's care following their release from the hospital two months later,[2] and a neglect petition was filed against respondents alleging, inter alia, that they failed to provide Michael and Tiffany with adequate food, clothing and shelter. Respondents thereafter made certain admissions and by order dated October 30, 1991, Family Court adjudicated Nicole, Michael and Tiffany to be neglected children and continued their placement with petitioner.

Thereafter, in April 1993, petitioner commenced these permanent neglect proceedings against respondents alleging that Nicole, Michael and Tiffany were permanently neglected children and seeking to terminate respondents' respective parental rights. Following a hearing, at which respondents appeared and testified, Family Court found that petitioner had established, by clear and convincing evidence, that the mother had permanently neglected Nicole and that both parents had permanently neglected Michael and Tiffany, and thereafter terminated respondents' parental rights. This appeal by respondents followed.

It is well established that "[t]he threshold inquiry in any permanent neglect proceeding is whether the petitioning agency has discharged its statutory duty to exercise diligent efforts to encourage and strengthen the parental relationship" (Matter of Shannon U., 210 AD2d 752, 753, lv denied 85 NY2d

---

1. Although the father also holds himself out as the biological father of Nicole, the record indicates that Nicole's biological father is Warren V., who executed a judicial surrender for adoption in February 1993 and is not a party to these proceedings.

2. The record reveals that the mother, who gave birth to the children on the floor of a local restaurant's rest room, smoked during delivery and continued to request additional cigarettes even after it became apparent that Michael and Tiffany were struggling to breathe.

807; *see, Matter of Michelle F.*, 222 AD2d 747, 748). This requirement, in turn, compels the petitioning agency to attempt reasonable and practical means to "encourage a meaningful relationship between the parent and his or her children and includes providing counseling, making suitable arrangements for visitation with the children, providing services and other assistance aimed at ameliorating or resolving the problems preventing discharge of the children to the parent's care, and keeping the parent informed of the children's progress and development" (*Matter of Shannon U., supra*, at 753; *see*, Social Services Law § 384-b [7] [f]) and, in so doing, the agency "must tailor its plan to fit each parent's individual circumstances" (*Matter of Charlene TT.*, 217 AD2d 274, 276).

Contrary to the mother's assertion, petitioner exercised diligent efforts to strengthen the relationship between respondents and the children. The record reveals that petitioner encouraged respondents to visit with the children, regularly scheduled visitations and arranged for transportation, kept respondents apprised of the children's progress in foster care, offered training for respondents with respect to Michael and Tiffany's special medical needs, and attempted to refer respondents to various services, including mental health evaluations and parenting classes. The record also indicates that respondents consistently refused all services, rarely participated in the scheduled visitations, failed to otherwise maintain contact with the children and, perhaps most significantly, steadfastly refused to execute the releases necessary in order to provide the needed referrals and services.[3] This Court previously has held that "[w]here, as here, an agency's reasonable attempts to nurture the parent-child relationship are opposed or met with indifference by uncooperative and recalcitrant parents, the agency shall be deemed to have met its statutory duty" (*Matter of St. Christopher O.*, 204 AD2d 765, 766, *lv denied* 84 NY2d 805; *see, Matter of Elizabeth Q.*, 216 AD2d 628, 629-630, *lv denied* 86 NY2d 706). In short, it was respondents' refusal to cooperate, not any inadequacy in petitioner's plan, that lead to the finding of permanent neglect and the termination of respondents' parental rights (*see generally, Matter of Michelle F., supra*, at 749).[4]

The arguments raised by the father do not warrant extended

---

3. At one point, respondents authored a letter to petitioner wherein they stated that their cooperation in this regard was contingent upon petitioner's purchasing an automobile for their use.

4. To the extent that the mother contends that petitioner's caseworkers were either unaware of her alleged mental limitations or failed to take her intellectual capabilities into consideration in formulating a service plan, two

discussion. As a starting point, the father contends that requiring him to work with petitioner's caseworkers violated his right of association as guaranteed by the First Amendment of the US Constitution. Assuming, without deciding, that this argument is properly before this Court, it appears that Family Court's order directing respondents to, *inter alia*, sign releases, cooperate with petitioner's efforts to reunite the family and undergo certain evaluations was entered upon the consent and stipulation of all parties. Thus, having consented to the very conduct that he now claims violates his right of association, the father is not aggrieved and cannot be heard to complain (*see, e.g., Matter of Cherilyn P.*, 192 AD2d 1084, *lv denied* 82 NY2d 652; *Tongue v Tongue*, 97 AD2d 638, *affd* 61 NY2d 809).

Similarly unavailing is the father's contention that Family Court erred in failing to consider his status as Michael and Tiffany's biological father. As noted previously, petitioner exercised diligent efforts to strengthen the relationship between respondents and the children and, by admittedly refusing to comply with petitioner's plan to reunite the family, the father forfeited his rights to parent Michael and Tiffany. Respondents' remaining arguments, including any assertion that termination of their parental rights was not in the children's best interest, have been examined and found to be lacking in merit. Accordingly, Family Court's order should be affirmed.

Mikoll, J. P., Mercure, White and Yesawich Jr., JJ., concur. Ordered that the order is affirmed, without costs.

observations must be made. First, the mother's claim of mental illness, retardation or inadequacy simply is not borne out by the record, and petitioner did not bear the burden of establishing that "no mental disability prevented [the mother] from adequately planning for her children" (*Matter of John ZZ.*, 192 AD2d 761, 762). Additionally, the record makes it abundantly clear that it was the mother's consistent refusal to cooperate and execute the necessary releases that prevented petitioner from obtaining the required evaluations and, in turn, from making appropriate referrals for services (*see, supra*).