■ In the Matter of AUSTIN A., a Child Alleged to be Permanently Neglected. CORTLAND COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellant; KEVIN A., Respondent. (And Another Related Proceeding.) [663 NYS2d 336] —Casey, J. Appeal from an order of the Family Court of Cortland County (Frawley, J.H.O.), entered August 5, 1996, which dismissed petitioner's application, in a proceeding to pursuant Social Services Law § 384-b, to adjudicate respondent's child to be permanently neglected.

In October 1989, at the age of 10, respondent's autistic son, Austin, was placed in petitioner's temporary custody following an incident wherein he was found wandering unsupervised near a major highway. After Austin was subsequently adjudicated by Family Court to be neglected, an order of disposition

was entered which continued placement with petitioner for one year and set forth supervised visitation. The dispositional order also required respondent to, *inter alia*, attend mental health counseling, maintain steady employment and establish a stable residence which accommodated the child's special safety needs. Over the next several years, until the commencement of this proceeding seeking an adjudication of permanent neglect,* multiple orders were entered extending placement of the child with petitioner.

After a fact-finding hearing, Family Court dismissed the permanent neglect petition finding that "a termination of parental rights is not in the best interests of the child" given that the purpose of doing so would be to free the child for adoption, a circumstance not likely to occur in this case. The court did, however, extend Austin's placement for another 12-month period. Petitioner now appeals.

Initially we find that Family Court never resolved the only issue that was before it at the fact-finding stage of this proceeding—whether petitioner had proven by clear and convincing evidence that the child was permanently neglected (*see*, Social Services Law § 384-b [3] [g]; [4] [d]; [7]). Only after this inquiry has been answered affirmatively is the court asked to decide, at the dispositional phase of the proceeding, what would be in the child's best interest (*see*, Family Ct Act § 623), and termination of parental rights is only one option available (*see*, Family Ct Act §§ 631, 634; *see also, Matter of Michael B.*, 80 NY2d 299, 310). Family Court therefore skipped its fact-finding function and proceeded directly to the dispositional aspect of the proceeding when it decided that it was not in the child's best interest to terminate respondent's parental rights. Consequently we will now determine, based on the record before us, whether petitioner has met its burden of establishing permanent neglect by clear and convincing evidence.

The threshold inquiry in any permanent neglect proceeding is whether the agency exercised diligent efforts to encourage and strengthen the parental relationship (*see*, Social Services Law § 384-b [7] [a]; *Matter of Star Leslie W.*, 63 NY2d 136, 142). While it is true that a parent must assume some measure of responsibility and initiative (*see, Matter of Jamie M.*, 63 NY2d 388, 393), the agency must first fulfill this statutory obligation. To meet the diligent efforts requirement "[a]n agency must always determine the particular problems facing

---

* A separate petition was filed to extend placement of the child for an additional year. The disposition of that petition, however, is not before this Court.

a parent with respect to the return of his or her child and make affirmative, repeated, and meaningful efforts to assist the parent in overcoming these handicaps" (*Matter of Sheila G.*, 61 NY2d 368, 385). The agency "should mold its 'diligent efforts' to fit the individual circumstances so as to allow the parent to provide for the child's future" (*Matter of Amber W.*, 105 AD2d 888, 891; *see, Matter of Jesus JJ.*, 232 AD2d 752, 753, *lv denied* 89 NY2d 809; *Matter of Charlene TT.*, 217 AD2d 274, 276).

Testimony by Marilyn Avery, a caseworker for the Central New York Developmental Services Office, and Suzanne Greenwood, Austin's foster mother for seven years, reveals that Austin is severely autistic and his special needs are considerable. Austin will eat around the clock if someone is not constantly paying attention to him and he has certain behaviors that require redirection due to their inappropriateness. Nothing Austin does is intentionally harmful, yet he must be supervised at all times as he has no appreciation of danger and will ingest inedible objects. As a result, the Greenwood home is equipped with cupboard and refrigerator locks, motion detectors and door alarms, all in an effort to prevent Austin from inflicting harm upon himself.

While respondent testified that he recognizes the dangers Austin would face in an inappropriate home environment, he has yet to adapt his home to accommodate the child's extensive needs. Petitioner has offered no testimony, however, to indicate what efforts, if any, it has made to assist respondent in modifying his home, or to inform him of the expense of such renovations, which could be quite costly for someone like respondent who is receiving Social Security income. The biggest impediment to Austin's return is that, although respondent loves Austin, he does not fully understand the child's severe limitations and he is unrealistic toward his son's needs. Although petitioner has maintained regular contact with respondent and has offered him various counseling services, to which respondent has not always been responsive, none seem to truly focus on educating respondent about autism or Austin's specific needs. Rather, a review of the service plans from 1991 to 1996 reveals little change in the goals petitioner has set for itself and respondent to further the objective of returning Austin to respondent's home. In fact the plans require respondent, a man who is functionally illiterate, to mostly seek out educational services himself. The plan does list Avery's agency as a source of information for respondent regarding the needs of an autistic child, yet Avery's testimony indicates that her agency's

involvement is strictly with the child. Consequently, this agency does not have any responsibility to maintain contact with respondent until Austin moves back in with him.

Furthermore, the weekly, one-hour visits set up by petitioner, which are clearly not meant to foster a bond between Austin and respondent given the testimony that he is incapable of such behavior, can do little to help respondent get the needed firsthand appreciation for Austin's autism and his 24-hour needs. In addition, these one-hour visits by respondent, which have become more regular over time, do nothing to familiarize Austin with other members of respondent's household, yet testimony throughout the record emphasizes how important familiarity and consistency are in Austin's everyday life. Finally, while petitioner complains that respondent has failed to maintain steady employment as required by previous court orders, it was recognized by petitioner's caseworker that the reason for respondent's unemployment is his illiteracy, and lacking in this record is evidence that petitioner has offered any services which would help respondent in this regard.

Although petitioner has established various service plans for respondent, we find that in these circumstances the recommended services are either irrelevant to Austin's specific problems or are not tailored to respondent's individual situation and, therefore, they provide no realistic chance of assisting respondent in obtaining Austin's return (*see, Matter of Jesus JJ.*, 223 AD2d 955, 957; *Matter of Jessica UU.*, 174 AD2d 98, 101-102). As such, we find that petitioner has failed to meet its statutory obligation of diligent efforts and for this reason we affirm Family Court's dismissal of the permanent neglect petition.

Mikoll, J. P., Crew III, White and Spain, JJ., concur. Ordered that the order is affirmed, without costs.