■ In the Matter of JEREMY KK., a Child Alleged to be Permanently Neglected. SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; GORDON KK., Appellant. [674 NYS2d 842] —Yesawich Jr., J. Appeal from an order of the Family Court of Schenectady County (Catena, J.), entered January 7, 1997, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's child to be permanently neglected, and terminated respondent's parental rights.

Jeremy KK., who is the subject of this proceeding, was born out-of-wedlock on April 23, 1995; several days later, he was temporarily placed in petitioner's custody with his mother's voluntary consent. Because she and respondent (the child's father) were allegedly unable to care for Jeremy (who tested positive for cocaine at birth and exhibited symptoms of withdrawal thereafter), petitioner requested that they undergo psychological evaluation. On the basis of this evaluation, it was recommended that respondent—who had a history of cocaine dependence and alcohol abuse, antisocial and impulsive personality disorders, and domestic violence, and was found to be incapable of caring for a young child—participate in substance abuse counseling, parenting skills education and family counseling. Jeremy, who was adjudicated a neglected child on June 5, 1995, remained in petitioner's custody pursuant to court orders while efforts were made to reunite him with his parents.

On June 6, 1996, petitioner filed permanent neglect petitions against both parents, and the mother thereafter agreed to surrender her parental rights. Respondent contested the allega-

tions and a fact-finding hearing was held, at the conclusion of which Family Court found that he had permanently neglected Jeremy within the meaning of Social Services Law § 384-b. After considering the parties' arguments with respect to an appropriate disposition, the court determined that it would be in Jeremy's best interest to terminate respondent's parental rights, and this appeal followed.

We affirm. Respondent's initial contention, that petitioner failed to demonstrate that it had made diligent efforts to strengthen his relationship with Jeremy (*see*, Social Services Law § 384-b [7]), is unpersuasive. The plan devised by petitioner was realistic and well-suited to respondent's individual situation (*see, e.g., Matter of Jesus JJ.*, 232 AD2d 752, 753, *lv denied* 89 NY2d 809), as it focused on the particular deficits that stood in the way of his reunification with Jeremy and provided respondent with ample opportunity to visit with the child, and to avail himself of the services necessary to overcome his problems and alter his detrimental lifestyle. Petitioner was not required to revise the plan to accommodate respondent's insouciant approach toward meeting his obligations (*see, Matter of Veronica T.*, 244 AD2d 654, 655).

Respondent was also provided with substantial assistance in complying with the plan (*see, Matter of Josephine O.*, 245 AD2d 900, 901-902, *lv denied* 91 NY2d 814). To that end, petitioner arranged for visitation and counseling, set up appointments for respondent, enrolled him in parenting classes and provided a public health nurse to aid respondent in learning to care for the baby. It simply cannot be disputed, on this record, that petitioner made "affirmative, repeated and meaningful efforts" to foster the parent-child relationship (*Matter of Sheila G.*, 61 NY2d 368, 385).

The finding of permanent neglect is also fully supported by the record. According to the uncontroverted testimony of petitioner's caseworker, during the year prior to commencement of this proceeding respondent continued to deny that he had a drug problem (although he admittedly used crack cocaine and marihuana on a daily basis); explicitly refused to participate in any kind of counseling or to attend classes; failed to attend three drug screening appointments; and missed all but one of the 12 scheduled meetings with the caseworker (despite the fact that, for much of this period, he lived about one block from petitioner's office). Respondent's attitude toward these services and obligations ranged from defiant to disinterested. Moreover, his visitation with Jeremy was inconsistent—he failed to see the child at all for several months, and attended

scheduled visits only sporadically thereafter—and he did not show any improvement in his parenting skills. And, most significantly, respondent continued to participate in, and to allow his residence to be used for, drug use and trafficking. In sum, the record reveals respondent to have been an utterly uncooperative and indifferent parent (*see, Matter of Sheila G.*, *supra*, at 385; *compare, Matter of Robert F.*, 195 AD2d 715, 717), who refused to exert even a modicum of effort toward planning for his child's future.

Mikoll, J. P., Mercure, Crew III and Carpinello, JJ., concur. Ordered that the order is affirmed, without costs.