In the Matter of Lisa Z. and Another, Children Alleged to be Permanently Neglected. Tompkins County Department of Social Services, Respondent; Raymond Z., Appellant. (Proceeding No. 1.) In the Matter of Lisa Z. and Another, Children Alleged to be Permanently Neglected. Tompkins County Department of Social Services, Respondent; Sherry X., Appellant. (Proceeding No. 2.) [717 NYS2d 730] —Cardona, P. J. Appeals from two orders of the Family Court of Tompkins County (Sherman, J.), entered October 5, 1999, which granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate respondents' children to be permanently neglected, and terminated respondents' parental rights.

Respondents, Raymond Z. (hereinafter the father) and Sherry X. (hereinafter the mother), are the parents of Lisa (born in 1992) and James (born in 1997). In March 1998, the children came into petitioner's foster care due to allegations that the father sexually abused Lisa and the mother failed to protect her from that abuse. Pursuant to Family Court Act article 10, the children were subsequently adjudicated to be neglected by the mother upon a finding that she failed to protect her daughter from sexual abuse and failed to meet the children's developmental needs. The children were adjudicated to be abused and neglected by the father as a result of his sexual abuse of Lisa.

The instant proceedings, commenced on March 29, 1999, al-

lege that the children were permanently neglected by respondents and seek termination of their parental rights. Following fact-finding and dispositional·hearings in September 1999, the children were found to be permanently neglected based upon respondents' failure to plan for their future (see, Social Services Law § 384-b [7] [a]), their parental rights were terminated and custody of both children was transferred to petitioner resulting in these appeals.

I. Procedural Arguments

Initially, the mother argues that Family Court erred when it permitted petitioner to adduce dispositional testimony from two witnesses, Jean Steiner and Amanda Spaulding, during the fact-finding phase. Although we do not favor this practice, given a court's considerable discretion to control the order of the introduction of evidence in a case before it (see, Feldsberg v Nitschke, 49 NY2d 636, 643-644; Orlando v Rubersi Sales, 255 AD2d 802, 804), we cannot say, under the particular circumstances of this case, that Family Court abused its discretion. We do, however, find merit in the mother's argument that Family Court impermissibly considered certain testimony from Spaulding in its fact-finding decision which involved matters that occurred after the filing of the permanent neglect petition (see, Matter of Christopher II., 222 AD2d 900, 902, lv denied 87 NY2d 812). Specifically, the court noted that the mother's "revelation [of her belief that the father sexually abused Lisa] * * * did not occur until mid-June of this year." The court's statement shows that it considered Spaulding's dispositional testimony regarding events that occurred on June 4, 1999 and June 16, 1999, both beyond the March 29, 1999 filing date of the petition. Nevertheless, we find other evidence during the time period prior to the filing of the petition from which Family Court could have concluded that the mother failed to adequately acknowledge the abuse during the year preceding the filing of the petition. Thus, the court's error does not require reversal.

The mother's next procedural contention is that Jean Steiner, the mental health clinician who conducted the Protective Parenting Group which the mother attended, should not have been permitted to testify because her name was not on petitioner's expert disclosure list. We find that the record supports Family Court's conclusion that Steiner was a fact, not an expert, witness. Notably, on direct examination, Steiner's testimony was limited to her observations of the mother's participation in the program (see, Matter of Patrick H., 229 AD2d 682, 683). She was not asked on direct examination to

render an expert opinion or otherwise testify from her expertise.

## II. Petitioner's Exercise of Diligent Efforts

We turn next to respondents' contentions that the evidence was insufficient to support Family Court's determination that they permanently neglected their children. Respondents argue that petitioner failed to discharge its statutory duty to exercise diligent efforts to encourage and strengthen the parental relationship with each child (*see*, Social Services Law § 384-b [7] [a]). We find this argument unpersuasive.

With respect to the father, the evidence shows that petitioner made arrangements for him to have supervised biweekly visits with James. There were no visits with Lisa because of the entry of an order of protection preventing any contact by him with the child. Petitioner devised a plan which required a psychological evaluation, a sex offender evaluation, completion of a sex offender program and participation in a program for men who are violent. Contrary to the father's contention, petitioner was not required to formulate an alternative plan which would permit treatment without the necessity of an admission to the abuse (*see*, *Matter of Michelle F.*, 222 AD2d 747, 749).

Petitioner's service plan for reuniting the mother with her children required her to believe that her daughter had been sexually abused by her father, maintain regular visitation with the children, participate in a nonoffender group, maintain a separate residence from the father as long as he remained an untreated sex offender, undergo a psychological evaluation, permit her caseworker into her home, and participate in monthly counseling with her caseworker. The mother was provided with substantial assistance in complying with the plan. Petitioner's caseworker, Carol Santucci, arranged to have supervised visits with both children for the mother who had biweekly visits with Lisa and saw James three times per month. Santucci provided transportation to the visits and to the nonoffender program. Additionally, Santucci counseled the mother monthly in an effort to get her to understand the importance of believing her daughter's statements that the abuse occurred, motivate her to attend individual psychotherapy, and attend Challenge Industries to learn how to live independently from the father's family.

In our view of the record, the plans devised and the assistance offered by petitioner to respondents were realistically calculated to overcome the problems preventing the return of the children (*see*, *Matter of Richard W.*, 265 AD2d 685, 687;

*Matter of Michelle F.*, *supra*, at 749) and, contrary to the mother's contention that her plan failed to accord her more individualized assistance given her low intelligence, were well-suited to each respondent's individual circumstances (*see, Matter of Jeremy KK.*, 251 AD2d 904, 905; *Matter of Charlene TT.*, 217 AD2d 274, 276). We therefore find clear and convincing evidence that petitioner fulfilled its statutory obligation to exercise diligent efforts to encourage and strengthen the parental relationship. Having resolved the threshold issue of whether petitioner exercised diligent efforts, the pertinent inquiry becomes whether respondents "[have] failed for a period of more than one year [to] * * * plan for the future of the child[ren], although physically and financially able to do so" (Social Services Law § 384-b [7] [a]).

III. The Father's Permanent Neglect of Lisa and James

The record shows that for a period of more than one year following the date the children came into petitioner's care, the father adamantly and consistently refused to acknowledge his sexual abuse of Lisa despite a Family Court article 10 adjudication that he had done so. Because he refused to acknowledge the abuse, he was deemed ineligible for both the sex offender program and the program for men who are violent. In addition, he failed to follow through on petitioner's recommendation that he obtain individual counseling. Despite maintaining regular visitation with James, the father failed to take meaningful steps toward alleviating the conditions that led to the children's removal from their home (*see, Matter of Nathanial T.*, 67 NY2d 838, 840; *Matter of Christopher II.*, 222 AD2d 900, 901-902, *supra*). We conclude, therefore, that petitioner established by clear and convincing proof that the father failed to adequately plan for the children's future although physically and financially able to do so (*see, Matter of Sadie K.*, 249 AD2d 640, 642) and affirm Family Court's finding of permanent neglect by the father with respect to both children.

IV. The Mother's Permanent Neglect of Lisa and James

Turning now to the sufficiency of the evidence presented regarding the mother's permanent neglect of Lisa and James, we note that although the mother did indicate a number of times during the year preceding the filing of the petition that she believed Lisa, she could not articulate in response to questioning what she specifically believed. She continued to maintain that she did not see it (the abuse) and, therefore, could not say that it happened until March 1999 when she indicated that while she did not see it, that did not mean the abuse did not occur. Furthermore, during a visit on March 24,

1999 when Lisa asked her mother if she (her mother) was angry at her (for telling about the abuse), the mother said she was not. The mother indicated that she was proud of Lisa for telling the truth and that "whoever did this to you was sick." Significantly, the mother did not mention the father or identify the perpetrator.

The record also shows that despite completion in 1998 of a 10-week "Protective Parenting Program" designed to teach nonoffending parents how to keep their children safe from sexual abuse, the mother was unable to identify the behavioral indicators or signs of child sexual abuse in Lisa. Although the mother cooperated with all other aspects of her service plan, she did not make sufficient progress for a period of more than one year following the date that Lisa and James came into petitioner's care to overcome the primary problem that led to their removal—acknowledging that the father had sexually abused their daughter. The mother's continued refusal to acknowledge this evinced an inability to take the step necessary to correct the condition that led to the removal of Lisa and James in the first instance (*see, Matter of Nathaniel T., supra,* at 840; *Matter of Sonia H.,* 177 AD2d 575, 576; *Matter of Crystal Q.,* 173 AD2d 912, 913, *lv denied* 78 NY2d 855) and prevented any assurance that they would be safe if returned home (*see, Matter of Jesus II.,* 249 AD2d 846; *Matter of Jesus JJ.,* 232 AD2d 752, 755, *lv denied* 89 NY2d 809; *Matter of Crystal Q., supra,* at 913). Moreover, the record shows that the mother failed to recognize the detrimental effect that the abuse had on her daughter.

In our view, these circumstances demonstrate the failure on the mother's part to plan for her children's future for the requisite one-year period (*see, Matter of Jesus JJ., supra,* at 755; *Matter of Beverly K.,* 213 AD2d 795). Accordingly, there is clear and convincing evidence to support Family Court's determination that Lisa and James were permanently neglected children.

## V. Termination of the Father's Parental Rights

The father's dispositional testimony demonstrates that he continues to deny sexually abusing his daughter. That lack of insight will continue to prevent him from receiving effective rehabilitative services to ensure the children's return to a safe home. Under such circumstances, we agree with Family Court that termination of the father's rights serves the best interests of both children.

## VI. Termination of the Mother's Parental Rights with Respect to Lisa

We turn to the more troublesome question of whether the mother's parental rights should have been terminated. We proceed, mindful of the rule "that Social Services Law § 384-b 'authorize[s] termination of parental rights only when specific and definite criteria are met *and* when necessary in the best interest of the child'" (*Matter of Michael E.*, 241 AD2d 635, 638, quoting *Matter of Nereida S.*, 57 NY2d 636, 640 [emphasis in original]). The dispositional testimony of Ruana Starer, a clinical psychologist, established that the mother's intellectual functioning is within a mildly retarded range.* Despite the reservations of the mental health professionals and caseworkers that the mother may never be able to adequately care for her daughter because of the mother's low intellectual functioning, her own needs, and the special needs of Lisa, we emphasize that the standard to be applied for termination here is not mental retardation, i.e., whether the mother is presently and for the foreseeable future unable to provide proper and adequate care for her daughter (*see*, Social Services Law § 384-b [4] [c]), but whether termination is in Lisa's best interest.

Despite the mother's limited intellectual and emotional functioning, the dispositional evidence shows that she completed virtually every aspect of her service plan, taking and completing the Protective Parenting Program a second time, and entering individual psychotherapy. The evidence further indicates that she benefitted from the services she received. By the time of her second postgroup evaluation in July 1999, she was able to make an improved presentation of the material that Steiner had presented during the program and stated that she believed that her daughter had been sexually abused by her father. She was also able to list clusters of behavioral indicators and risk factors of sexual abuse and indicated that she would call the police if her daughter made a future disclosure of sexual abuse.

Santucci, the mother's caseworker, acknowledged that she saw an increased understanding by the mother of her child's needs at the second postgroup evaluation. Other evidence indicated that at her visits with Lisa, the mother displayed warmth and love, even though she had trouble setting limits for Lisa. Michael Lakin, a clinical psychologist, observed a genuine attachment between mother and daughter. He concluded that their contact should continue in a supervised setting and opined that severing the contact would be detrimental to Lisa.

---

* We note that petitioner did not seek to terminate the mother's parental rights based upon mental retardation (*see*, Social Services Law § 384-b [4] [c]; [6] [b]).

Given the dispositional evidence which reveals the mother's efforts, to the best of her ability, to meet the goals of her service plan and her progress toward those goals, we find inadequate support in the record for Family Court's determination that Lisa's best interest necessitates termination of her mother's parental rights. Accordingly, we reverse that determination and remit for further dispositional proceedings, namely, the entry of a suspended judgment (*see*, Family Ct Act § 631 [b]) whose duration and conditions should be determined by Family Court (*see*, Family Ct Act § 633).

**VII. Termination of the Mother's Parental Rights with Respect to James**

Aside from testimony that James has now overcome the developmental delays exhibited at the time that he first came into foster care, there was insufficient testimony from any mental health professional or caseworker establishing the mother's inability to parent James effectively or the effect it would have on him if contact with her were permanently severed. Thus, we cannot say that the record before us demonstrates that James' best interest necessitates termination of his mother's parental rights. Accordingly, we reverse that determination and likewise remit for further dispositional proceedings, namely, the entry of a suspended judgment whose duration and conditions should be determined by Family Court.

Mercure, Peters and Spain, JJ., concur. Ordered that the order in proceeding No. 1 is affirmed, without costs. Ordered that the order in proceeding No. 2 is modified, on the law and the facts, without costs, by reversing so much thereof as terminated the parental rights of Sherry X. with respect to Lisa Z. and James Z.; matter remitted to the Family Court of Tompkins County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.