■ In the Matter of VICTOR WW. and Another, Children Alleged to be Permanently Neglected. SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellant; SALMA XX., Respondent. [947 NYS2d 213]—

Garry, J. Appeal from an order of the Family Court of Schenectady County (Clark, J.), entered October 7, 2011, which dismissed petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's children to be permanently neglected.

Respondent is the mother of twin children (born in 2003) who were removed from her care in December 2008 after they were injured by her paramour. Respondent admitted to neglect on the basis of her then-untreated mental illness and was directed, among other things, to comply with substance abuse and mental health treatment.* In March 2011, petitioner commenced this permanent neglect proceeding seeking to terminate respondent's parental rights. Following a hearing, Family Court dismissed the petition. Petitioner appeals.

Family Court determined that petitioner made the requisite diligent efforts to strengthen and encourage respondent's relationship with her children, but did not prove by clear and convincing evidence that she failed to plan for the children's future for the specified period (see Social Services Law § 384-b [7]; Family Ct Act § 614; Matter of Jyashia RR. [John VV.], 92 AD3d 982, 983 [2012]). This Court accords great deference to such determinations because of the court's opportunity to evaluate the demeanor and credibility of witnesses, and will disturb its factual findings only "if they lack a sound and substantial basis in the record" (Matter of Joshua BB., 27 AD3d 867, 869 [2006] [internal quotation marks and citation omitted]). Petitioner contends that the requisite basis is lacking as respondent's interactions with her paramour demonstrate that she continues to lack insight into the risk posed to her children by domestic violence and has thus failed to " 'take meaningful steps toward alleviating the conditions that led to the children's removal from [her] home' in the first instance" (Matter of Alaina E., 59 AD3d 882, 885 [2009], lv denied 12 NY3d 710 [2009], quoting Matter of Lisa Z., 278 AD2d 674, 677 [2000]). Unfortunately, Family Court failed to fully address and analyze this key issue of the risks posed to the children by domestic violence; however, the record is sufficiently complete to permit this Court to exercise its own factual review of the testimony and evidence (see Matter of Alexis X., 19 AD3d 759, 761 [2005]; Matter of Kaitlyn R., 279 AD2d 912, 914 [2001]; Matter of Kelly G., 244 AD2d 709, 709-710 [1997]).

Clearly, respondent initially failed to understand the gravity

---

* Respondent is diagnosed with major depression.

of both the risk posed and the injuries caused to the children by the paramour, claiming that he had only been "rough playing" with the children. During this early period, she told various providers that she planned to continue her relationship with him and wanted him to be part of the children's lives. However, by the end of 2009, respondent had ended her relationship with him and obtained an apartment of her own. Further, she made sufficiently impressive progress in other areas—including engaging in mental health treatment and other services, acquiring a car and regular employment, and avoiding the use of drugs—that, by February 2010, petitioner was allowing unsupervised visits and planning to return the children to respondent's care at the end of the school year.

In April 2010, petitioner deferred these plans and reinstated supervised visitation upon learning that respondent might have used marihuana on one occasion and had violated her visitation contract by permitting a man known as Brandon to be present during a visit with her children. Thereafter, respondent experienced a cascade of setbacks; she lost her automobile as a result of a car accident, which then resulted in the loss of her employment and apartment, and she developed medical problems that required several hospitalizations. During this period her compliance with treatment and services deteriorated.

However, in 2010, respondent did successfully complete a domestic violence education program on how to recognize dangerous men. It further appears that, except for a brief period at the end of 2010, she continued to avoid contact with the paramour. Petitioner contends that this testimony reveals that two years after the removal of her children, respondent still failed to appreciate the risk posed by her relationship with the paramour. Respondent's progress was described by a family support worker who testified that although respondent initially refused to concede that the paramour had harmed her children or posed any risk to them, in the months immediately prior to commencement of this proceeding, respondent consistently took the position that the paramour had hurt her children and that she wanted nothing to do with him.

Taken as a whole, this record does not reveal that respondent failed to "take meaningful steps to correct the conditions that led to the child[ren]'s removal" (*Matter of Tatianna K. [Claude U.]*, 79 AD3d 1184, 1186 [2010]; *see* Social Services Law § 384-b [7] [c]; *Matter of Alaina E.*, 59 AD3d at 885). Nor did she display any general "pattern of hostility and refusal to cooperate" with petitioner's efforts to assist her (*Matter of Tailer Q. [Melody Q.]*, 86 AD3d 673, 674 [2011]). Instead, she cooperated—not always

perfectly or consistently—with the services provided to her, made considerable efforts to visit her children regularly and, by all accounts, maintained a close, appropriate and mutually affectionate relationship with the children throughout their stay in petitioner's care. Respondent's shortcomings are significant and her progress has been inconsistent, but the record in this close and difficult case does not provide clear and convincing proof that she "substantially and continuously or repeatedly [failed] to maintain contact with or plan for the future" of her children for the statutory period (Social Services Law § 384-b [7] [a]; *see Matter of Alexis X.*, 19 AD3d at 761-762; *compare Matter of Nicholas R. [Jason S.]*, 82 AD3d 1526, 1527-1528 [2011], *lv denied* 17 NY3d 706 [2011]; *Matter of Shania D. [Peggy E.]*, 82 AD3d 1513, 1514 [2011]; *Matter of Ronnie P. [Danielle Q.]*, 77 AD3d 1094, 1096-1097 [2010]).

Peters, P.J., Mercure, Stein and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.