Matter of Cheyenne C. (James M.) (2020 NY Slip Op 04264)





Matter of Cheyenne C. (James M.)


2020 NY Slip Op 04264


Decided on July 24, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 24, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, NEMOYER, CURRAN, AND WINSLOW, JJ.


581 CAF 19-01920

[*1]IN THE MATTER OF CHEYENNE C., MADELINE C., AND SOPHIA C. JEFFERSON COUNTY DEPARTMENT OF SOCIAL SERVICES, PETITIONER-RESPONDENT; JAMES M., RESPONDENT-APPELLANT. (APPEAL NO. 2.)






PAUL B. WATKINS, FAIRPORT, FOR RESPONDENT-APPELLANT.
MICHAEL D. WERNER, WATERTOWN, FOR PETITIONER-RESPONDENT.
MICHELLE M. SCUDERI, WATERTOWN, ATTORNEY FOR THE CHILDREN. 


 Appeal from an order of the Family Court, Jefferson County (Eugene J. Langone, Jr., J.), entered June 18, 2019 in a proceeding pursuant to Social Services Law § 384-b. The order, among other things, transferred the guardianship and custody of the subject children to petitioner. 
It is hereby ED that the order so appealed from is unanimously affirmed without costs.
Memorandum: In this proceeding pursuant to Social Services Law § 384-b, respondent father appeals in appeal No. 1 from an order (denominated dispositional decision) of Family Court that, inter alia, terminated his parental rights with respect to the subject children, freed the children for adoption, and directed petitioner to submit a dispositional order. In appeal No. 2, the father appeals from that dispositional order, which, among other things, adjudged the children to have been permanently neglected, terminated the father's parental rights, and freed the children for adoption.
Initially, we conclude that the appeal from the order in appeal No. 1 must be dismissed because it was not taken from an order of disposition and, therefore, is not appealable as of right (see Family Ct Act § 1112; see generally Matter of Jerralynn R. Mc. [Scott Mc.], 114 AD3d 793, 794 [2d Dept 2014]; Matter of James L. [appeal No. 2], 74 AD3d 1775, 1775 [4th Dept 2010]). To the extent the father challenges the propriety of the order at issue in appeal No. 1, his contentions are reviewable on the appeal from the order in appeal No. 2 (see Jerralynn R. Mc., 114 AD3d at 794; see generally CPLR 5501 [a] [1]; Family Ct Act § 1118; Matter of Orzech v Nikiel, 91 AD3d 1305, 1306 [4th Dept 2012]).
Contrary to the father's contention in appeal No. 2, we conclude that the record amply demonstrates that petitioner established by clear and convincing evidence that it made the requisite diligent efforts—i.e., "reasonable attempts . . . to assist, develop and encourage a meaningful relationship between the parent and child[ren]" (Social Services Law § 384-b [7] [f])—to reunite the father with the children (see § 384-b [7] [a]; Matter of Sheila G., 61 NY2d 368, 380-381 [1984]).
The father contends that petitioner failed to meet its burden because it presented evidence of its diligent efforts only with respect to the one-year time period coinciding with the father's alleged permanent neglect of the subject children, even though petitioner was required to demonstrate that it exercised diligent efforts the entire time the children were in its custody. We reject that contention inasmuch as the statutory period for evaluating diligent efforts is "either at [*2]least one year or fifteen out of the most recent twenty-two months following the date such child[ren] came into the care of an authorized agency" (Social Services Law § 384-b [7] [a] [emphasis added]; see Matter of Star Leslie W., 63 NY2d 136, 146 [1984]). Furthermore, even if petitioner was required to present evidence of its diligent efforts outside the identified period of the father's alleged permanent neglect, we note that, in making its determination, the court considered evidence of petitioner's diligent efforts beyond the one-year period alleged in the petition. Specifically, there was clear and convincing evidence of petitioner's continued efforts to provide services to the father, including counseling, visitation, substance abuse treatment, and anger management treatment, as well as to provide him with information regarding the children.
Moreover, "[a]n agency which has tried diligently to reunite a [parent] with [his or] her child[ren] but which is confronted by an uncooperative or indifferent parent is deemed to have fulfilled its duty" (Star Leslie W., 63 NY2d at 144; see Matter of Noah V.P. [Gino P.], 96 AD3d 1472, 1473 [4th Dept 2012]). Here, petitioner provided substantial evidence that the father refused to cooperate with its efforts inasmuch as he, inter alia, revoked petitioner's access to his treatment records and unilaterally terminated his participation in counseling. Thus, we conclude that "[t]he record establishes by clear and convincing evidence that, although petitioner made affirmative, repeated, and meaningful efforts' to assist [the father], its efforts were fruitless because [the father] was utterly uncooperative" (Matter of Jessica Lynn W., 244 AD2d 900, 901 [4th Dept 1997]; see Sheila G., 61 NY2d at 385; Matter of Paul T.D., 19 AD3d 1048, 1049 [4th Dept 2005]).
We reject the father's further contention that petitioner failed to establish by clear and convincing evidence that he permanently neglected the children. Permanent neglect "may be found only after it is established that the parent has failed substantially and continuously or repeatedly to maintain contact with or plan for the future of the child[ren] although physically and financially able to do so" (Star Leslie W., 63 NY2d at 142, citing Social Services Law § 384-b [7] [a]). The term " to plan for the future of the child[ren]' " means "to take such steps as may be necessary to provide an adequate, stable home and parental care for the child[ren] within a period of time which is reasonable under the financial circumstances available to the parent" (§ 384-b [7] [c]; see Matter of Orlando F., 40 NY2d 103, 110 [1976]).
Here, petitioner supplied evidence that the father missed a substantial portion of scheduled visits with the children. Insubstantial or infrequent contacts with the children are insufficient to show that the father maintained substantial contact with them (see Social Services Law § 384-b [7] [b]; Matter of Robert Lee W., 198 AD2d 808, 808-809 [4th Dept 1993]). Additionally, the evidence demonstrated that the father reduced his participation in counseling services and then stopped participating altogether. He also revoked his consent to allow petitioner access to information from his counseling services. On the whole, the father's steadfast refusal to cooperate with petitioner and its service plan demonstrated his unwillingness to plan for the future of his children (see Matter of Sonia H., 177 AD2d 575, 577 [2d Dept 1991]; see generally Matter of Whytnei B. [Jeffrey B.], 77 AD3d 1340, 1341 [4th Dept 2010]; Matter of Merle C.C., 222 AD2d 1061, 1062 [4th Dept 1995], lv denied 88 NY2d 802 [1996]).
Moreover, we note that the evidence demonstrated that the father failed to obtain adequate and safe housing during the relevant time period (see Matter of Eden S. [Joshua S.], 170 AD3d 1580, 1582-1583 [4th Dept 2019], lv denied 33 NY3d 909 [2019]). "[T]he planning requirement contemplates that the parent shall take such steps as are necessary to provide a home that is adequate and stable, under the financial circumstances existing, within a reasonable period of time. Good faith alone is not enough: the plan must be realistic and feasible" (Star Leslie W., 63 NY2d at 143, citing Social Services Law § 384-b [7] [c]). Here, for the first 20 months after the children were placed in petitioner's care, the father continued living with his mother, whom he described as "act[ing] like a lunatic" and who verbally assailed a caseworker. Thereafter, the father moved in with his significant other, although he admitted that her home did not have enough beds for the children to use. Petitioner was unable to conduct a home study to evaluate the adequacy of the new residence because of threats made by the father. In addition, a background check on the father's significant other did not return favorable results.
Finally, we reject the father's contention that the court abused its discretion in refusing to issue a suspended judgment. The court at the dispositional hearing is concerned only with the best interests of the children (see Family Ct Act § 631; Star Leslie W., 63 NY2d at 147), and its [*3]determination is entitled to great deference (see Matter of Nathaniel T., 67 NY2d 838, 842 [1986]). At the time of the dispositional hearing, the children had been in foster care for 2½ years, had bonded with the foster mother, and were doing well. The foster mother indicated her willingness to adopt the children. Although he was permitted to visit the children during this time, the father cancelled all such visits and thereby did not maintain contact with the children (see Noah V.P., 96 AD3d at 1474). Moreover, he refused to address the problems that led to the children's placement with petitioner in the first place (see Matter of Alex C., Jr. [Alex C., Sr.], 114 AD3d 1149, 1150 [4th Dept 2014], lv denied 23 NY3d 901 [2014]). We therefore conclude that the court properly terminated the father's parental rights and freed the children for adoption.
Entered: July 24, 2020
Mark W. Bennett
Clerk of the Court