OPINION OF THE COURT
 

 Memorandum.
 

 The order of the Appellate Division should be reversed,
 
 *840
 
 without costs, and the order of Family Court terminating respondents’ parental rights reinstated.
 

 In this proceeding
 
 *
 
 to terminate parental rights on grounds of permanent neglect, the issue that divided the two lower courts was whether respondents failed to plan for the future of their children (Social Services Law § 384-b [7]). Family Court found that "respondents have failed to plan for the future of the children, although physically and financially able to do so, notwithstanding the petitioner’s diligent efforts and specifically, they have failed to follow through with the plans proposed by the agency workers and ordered by this Court, for the return of the children.” The Appellate Division majority, upon its own review of the record, found that "respondents were improving”, and that Family Court’s contrary findings rested on a perceived failure of respondents "to change their attitude and transform themselves into skilled, competent parents”, an improper standard. Where the Appellate Division reverses the findings of fact of the trial court and makes its own contrary findings of fact, our role is to determine which court’s findings more closely comport with the weight of the evidence
 
 (see, Oelsner v State of New York,
 
 66 NY2d 636, 637). We conclude that the Family Court findings more closely comport with the weight of the evidence.
 

 The obligation to plan imposed by the Social Services Law requires parents "to take such steps as may be necessary to provide an adequate, stable home and parental care for the child within a period of time which is reasonable under the financial circumstances available to the parent. The plan must be realistic and feasible, and good faith effort shall not, of itself, be determinative.” (Social Services Law § 384-b [7] [c].) At a minimum, parents must "take steps to correct the conditions that led to the removal of the child from their home * * *. [T]he planning requirement also obligates parents to project a future course of action, taking into account considerations of how the child will be supported financially, physically and emotionally.”
 
 (Matter of Leon RR,
 
 48 NY2d 117, 125.)
 

 
 *841
 
 Where the focus of the inquiry is whether respondents have taken steps to correct the conditions that led to the removal of the children from the home, it is first necessary to ascertain what those conditions were. For this limited purpose, the prior neglect proceedings — summarized in the Family Court order of February 15, 1984 and in the Appellate Division dissent (112 AD2d 692, 693) — are relevant and instructive.
 

 Nathaniel, now 12, was removed from the home August 3, 1978, and has lived in petitioner’s care more than seven years. The remaining four children (Andrew, 10; Angelique, 9; Heather,
 
 7W,
 
 and Melissa, 6) — while removed and returned earlier — have lived in foster care since November 25, 1980. Between August 1978 and the present proceeding commenced five years later, four neglect petitions were filed, alleging filth, excessive corporal punishment, inadequate supervision and that the children had been locked in their rooms. While respondents had agreed to participate in various programs, avoid physical abuse and properly supervise the children, in November 1980 Family Court ordered removal to avoid a danger of immediate, serious injury to the children, the court finding further evidence of abuse and inability of respondents to control themselves or the children, failure to attend the agreed programs, poor judgment in caring for the children, and the existence of a lock still on the outside of a child’s bedroom (with the bed sheets of the five year old soiled). The dispositional order in the neglect proceeding recited in part that Andrew had been "diagnosed as suffering from undersocialized aggressive conduct disorder and attention deficit disorder,” and "respondents cannot cope with the care of this child”; that there was testimony to the effect that "Angelique is aggressive toward animals and people; verbal; swears and has fears of being locked in her room,” and relates, among reasons for this behavior, "her father putting feces in her mouth as punishment; her mother hitting her legs if she didn’t walk fast enough”; and that Nathaniel, at
 
 8V2,
 
 was described as "emotionally handicapped”, "not toilet-trained,” fearing his father and relating "stories told to him by his mother to the effect that he is half devil or half horse like his father.”
 

 Given the nature of the conditions that led to removal of the children, it is apparent that the central issue here is whether respondents have genuinely taken steps toward recognizing their problems and changing their attitudes and patterns of behavior. Attendance at the myriad programs and
 
 *842
 
 visits arranged for respondents clearly does not signal the necessary change, nor does their desire for return of the children. Of singular importance in reaching a determination as to whether respondents have actually learned to accept responsibility and modify their behavior must be an evaluation of respondents’ own testimony, particularly their credibility, as well as the evidence of witnesses (professional and nonprofessional) who have dealt with them in the various programs and observed them and the children. In this it is obvious that Family Court had the best vantage point, and its findings must be accorded the greatest respect
 
 (Matter of Irene O.,
 
 38 NY2d 776, 777;
 
 see also, Matter of Ray A. M,
 
 37 NY2d 619, 622-623). Moreover, both Law Guardians, court-appointed attorneys whose role was to protect and represent the interests of the children, have filed recommendations and briefs urging that these children have been permanently neglected and that parental rights should be terminated
 
 (see, Matter of Ray A. M„
 
 37 NY2d 619, 624,
 
 supra).
 

 We agree with Family Court that the evidence clearly and convincingly showed that, despite petitioner’s diligent efforts to reunite this family, respondents took no effective steps to correct the conditions leading to removal or advance a realistic, feasible plan. While continually finding fault with or no need for various programs and personnel, respondents "gained no insight into their own behavior which had been so physically and emotionally damaging to the children and had required their removal.” (112 AD2d 692, 696.)
 

 In the present circumstances, there is no occasion for remittal to the Appellate Division to determine whether termination of parental rights was in the children’s best interests (Family Ct Act § 631). Having reviewed the entire record, both Family Court decisions setting forth the special needs of the children, the recommendations of the Law Guardians, and bearing in mind that these unfortunate children — at least four of them emotionally handicapped — have lived in the limbo of foster care and litigation for more than seven years, we conclude that on the law a disposition other than termination of parental rights, freeing the children for adoption, would be reversible error.
 

 Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Alexander, and Titone concur in memorandum; Judge Hancock, Jr., taking no part.
 

 Order reversed, etc.
 

 *
 

 This consolidated proceeding involves two separate petitions. The first concerns only Nathaniel T. and the parental rights of his mother, Agnes T. The four younger children are the subject of the second petition, against their parents, Agnes and Kenneth T. One Law Guardian was appointed for Nathaniel, and one for the other children.