■ In the Matter of ESTHER II., a Child Alleged to be Permanently Neglected. TOMPKINS COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; NILSA JJ., Appellant. In the Matter of ESTHER II., a Child Alleged to be Permanently Neglected. TOMPKINS COUNTY DEPARTMENT OF SOCIAL SERVICES,

Respondent; JESUS II., Appellant. [681 NYS2d 876] —Yesawich Jr., J. Appeals from three orders of the Family Court of Tompkins County (Barrett, J.), entered October 30, 1997 and January 7, 1998, which granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate Esther II. a permanently neglected child, and terminated respondents' parental rights.

Esther II., the subject of this permanent neglect proceeding, was born on May 8, 1996. Respondents' third child, Esther was removed from their home shortly after her birth, pursuant to the emergency provisions of Family Court Act article 10, and was thereafter found to be a neglected child and committed to petitioner's custody for 12 months (*see, Matter of Esther II.,* 249 AD2d 848, 849). The circumstances prompting that determination are outlined in previous decisions involving this family (*see, id.; Matter of Jesus II.,* 249 AD2d 846; *Matter of Jesus JJ.,* 232 AD2d 752, *lv denied* 89 NY2d 809; *Matter of Jesus JJ.,* 223 AD2d 955; *Matter of Julissa II.,* 217 AD2d 743). Petitioner thereafter developed, and attempted to implement, individual service plans designed to assist each respondent in making the changes necessary to regain custody of Esther. When a year had elapsed, and neither respondent had made any significant progress toward correcting the problems that had led to the child's removal, the instant proceedings were commenced.

Although respondents were provided with petitioner's entire file for the relevant time period, they nevertheless sought further discovery in the form of extensive interrogatories (which incorporated numerous demands for the production of documents) and a request for independent psychological examinations of their two older children. Petitioner answered the interrogatories in part but refused to furnish much of the information demanded, on the grounds that it encompassed legal theories or conclusions, related solely to matters that had been previously adjudicated or entailed hypothetical inquiries that were not proper subjects for pretrial discovery. Petitioner also declined to authorize the desired examinations, explaining that the older children—with respect to whom respondents' parental rights have already been terminated—were neither subjects of these proceedings nor would they be called as witnesses. Respondents unsuccessfully sought an order compelling petitioner to respond more fully to their discovery demands.

After a hearing, Family Court granted petitioner's applications and ultimately terminated respondents' parental rights with respect to Esther. These appeals by respondents ensued.

Respondents argue that Family Court erred in its discovery ruling; we disagree. As petitioner notes, the material sought relates to issues that have already been fully litigated and resolved in earlier proceedings, namely, the abuse and neglect that had been inflicted upon respondents' older children. While these events also formed the basis for the initial adjudication that Esther was a neglected child, respondents cannot now collaterally attack the propriety of that determination, which was affirmed on appeal (*see, Matter of Esther II., supra*). Accordingly, the court did not abuse its discretion by refusing to compel petitioner to provide the information in question (*see, Feeley v Midas Props.*, 168 AD2d 416, 417).

Equally unpersuasive are respondents' assertions that petitioner failed to diligently help them achieve reunification of their family (*see,* Social Services Law § 384-b [7] [a]) in that it did not formulate service plans that took into account, *inter alia*, the absence of any formal judicial determination that respondent Jesus II. was actually the perpetrator of the sexual abuse experienced by his older daughter Julissa. The requirement that respondents accept some responsibility for the abuse which occurred while Julissa was in their custody was not improper (*see, Matter of Jesus II.*, 249 AD2d 846, 848, *supra; Matter of Jesus JJ.*, 232 AD2d 752, 754, *supra*).

Moreover, petitioner's caseworkers adjusted the specifics of the plan several times to address respondents' other concerns, by, for example, obtaining interpreters (despite respondents' apparent ability to communicate effectively in English), aiding respondents in locating Spanish-speaking counselors, accommodating respondents' needs or desires to change individual counselors or programs and providing financial assistance. Nevertheless, petitioner's numerous referrals for mental health and substance abuse treatment were all ultimately met with rejection by respondents, who eventually became utterly uncooperative and hostile toward petitioner's caseworkers, refusing to participate in any ameliorative programs or to communicate, other than in writing or through their respective attorneys, with petitioner's employees. In sum, petitioner did everything reasonably possible to encourage and assist respondents in addressing the problems—including sexual abuse, substance abuse and domestic violence—that led to Esther's removal, but respondents' continuing disavowal that problems existed prevented them from making any meaningful progress toward "changing their attitudes and patterns of behavior" (*Matter of Nathaniel T.*, 67 NY2d 838, 841).

Cardona, P. J., Mikoll, Crew III and White, JJ., concur. Ordered that the orders are affirmed, without costs.