■ In the Matter of JENNIFER R. Suffolk County Department of Social Services, Respondent; GORDANA KONDON R. et al., Appellants. (Proceeding No. 1.) In the Matter of STEVEN R. SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; GORDANA KONDON R. et al., Appellants. (Proceeding No. 2.) [817 NYS2d 309]—

In two related proceedings to terminate parental rights pursuant to Social Services Law § 384-b, the parents separately appeal, as limited by their respective briefs, from so much of an order of fact-finding and disposition of the Family Court, Suffolk County (Lehman, J.), entered April 1, 2005, as, after fact-finding and dispositional hearings, found that the subject children were permanently neglected, terminated their respective parental rights, and transferred guardianship and custody of the subject children to the Suffolk County Department of Social Services for the purpose of adoption.

Ordered that the order is affirmed, without costs or disbursements.

The Suffolk County Department of Social Services (hereinafter DSS) was relieved of its duty to exercise diligent efforts to strengthen the parent-child relationship and to reunite the family by order of the Family Court, Suffolk County, entered June 12, 2003. At a fact-finding hearing, DSS met its burden of proving, by clear and convincing evidence, that it fulfilled its duty to use reasonable efforts until this date (see Matter of Sheila G., 61 NY2d 368 [1984]). DSS presented evidence that it provided services to the parents including therapy, parenting classes, meetings with caseworkers, and regular visits with the subject children. These services continued even after DSS was relieved of its duty to use reasonable efforts.

Before terminating parental rights on the ground of permanent neglect, the court must find that the petitioner submitted proof that the parent failed to maintain contact with or plan for

the future of the child for one year after the child came into the custody of an authorized agency, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship (*see Matter of Gregory B.,* 74 NY2d 77, 86 [1989]; *Matter of Star Leslie W.,* 63 NY2d 136, 140 [1984]; *see also* Social Services Law 384-b [7] [a]). There is no dispute here that the parents maintained contact with the subject children. However, the Family Court's finding that the parents failed to plan for the future of the children should not be disturbed.

Social Services Law § 384-b (7) (c) provides that "to plan for the future of the child" shall mean to take such steps as may be necessary to provide an adequate, stable home and parental care for the child within a period of time which is reasonable under the financial circumstances available to the parent. The plan must be realistic and feasible, and good faith effort shall not, of itself, be determinative.

At a minimum, parents must take steps to correct the conditions that led to the removal of the children from the home (*see Matter of Nathaniel T.,* 67 NY2d 838, 840 [1986]; *Matter of Leon RR,* 48 NY2d 117, 125 [1979]). The central issue is whether the parents have genuinely taken steps toward recognizing their problems and changing their attitudes and patterns of behavior. Attendance at programs and visits does not signal the necessary change, nor does their desire for the return of the children. Of singular importance in determining whether the parents have learned to accept responsibility and modify their behavior is an evaluation of the parents' own testimony, particularly their credibility, and the testimony of witnesses who have dealt with them in programs and observed them and the children (*see Matter of Nathaniel T., supra* at 841-842).

Although the parents attended therapy and participated in parental skills training, the testimony of their therapists and DSS caseworkers, as well as the parents' own testimony, demonstrated that they never acknowledged their responsibility for the domestic violence in the home which led to the placement of the subject children in foster care, despite a prior finding that they had committed neglect. The parents continued to blame the older children for creating the situation by making up the allegations of neglect. A parent's efforts to remedy the conditions which resulted in the removal of a child must consist of more than a mere denial of all culpability or responsibility for past conduct (*see Matter of Sonia H.,* 177 AD2d 575 [1991]). The parents have shown no change in their behavior or thinking which would ensure the children's safety were they to be returned (*id.*). Thus, because they have been unable to gain

insight into their previous neglectful behavior, the Family Court correctly found that they failed to adequately plan for their children's future, and therefore the subject children were permanently neglected (*see Matter of Ajuwon H.*, 18 AD3d 752 [2005]).

The evidence elicited at the dispositional hearing established by a preponderance of the evidence that it is in the children's best interests to terminate parental rights and free the children for adoption (*see Matter of Jeremiah Kwimea T.*, 10 AD3d 691 [2004]). The children had been in foster care for almost five years at the time of the dispositional hearing and had developed a close relationship with a caring foster family, and the parents could not presently ameliorate the conditions that led to the children's placement (*see Matter of Kianna Maria L.*, 26 AD3d 166 [2006]). The parents had never changed their position from the beginning of the neglect proceedings that they never neglected their children, that there was no domestic violence in the home, and that the original neglect petition was based on a fabrication by the older children. There was no indication that they would ever change that position.

The father's remaining contentions are without merit. Adams, J.P., Santucci, Lunn and Dillon, JJ., concur.