■ In the Matter of ABRAHAM C., an Infant. MONROE COUNTY DEPARTMENT OF HUMAN SERVICES, Respondent; ROSA C. et al., Appellants. [865 NYS2d 820]—

Appeals from an order of the Family Court, Monroe County (Anthony J. Sciolino, J.), entered December 13, 2006 in a proceeding pursuant to Social Services Law § 384-b. The order, among other things, terminated the parental rights of respondents.

It is hereby ordered that the order so appealed from is unanimously affirmed without costs.

Memorandum: Respondents appeal from an order adjudicating their child to be permanently neglected and terminating their parental rights with respect to him. Respondents previously consented to a finding of neglect and the child was placed in petitioner's custody when petitioner discovered that the child, then three months old, had sustained multiple fractures. The child thereafter was returned to respondents on two occasions. Petitioner commenced this proceeding seeking to terminate respondents' parental rights, alleging that respondents failed to keep the child safe while in their care and that the child sustained physical injuries and/or was medically neglected.

Respondent father failed to preserve for our review his contention that the petition is jurisdictionally defective because it failed to set forth the requisite diligent efforts of petitioner to

encourage and strengthen the parental relationship pursuant to Family Court Act § 614 (1) (c) (*see Matter of Kimberly Vanessa J.*, 37 AD3d 185 [2007]; *Matter of Nathaniel W.*, 24 AD3d 1240, 1241 [2005], *lv denied* 6 NY3d 711 [2006]). In any event, the father's contention lacks merit inasmuch as the petition sufficiently detailed those diligent efforts (*see Matter of Ashley M.* [appeal No. 1], 278 AD2d 892 [2000], *lv denied* 96 NY2d 710 [2001]; *Matter of Jeffrey LL.*, 251 AD2d 756, 757 [1998], *lv denied* 92 NY2d 809 [1998]). Petitioner alleged that it worked with respondents to reunite them with the child and noted that he was in fact returned to their care twice. According to petitioner, it encouraged respondents to comply with the requirements of the dispositional order issued in the prior neglect proceeding, including regular visitation, counseling, parenting skills training, appropriate housing and stable income. Finally, petitioner alleged that it made efforts to provide Spanish-speaking interpreters and service providers for the father.

Also contrary to the contention of the father, Family Court properly determined that petitioner made diligent efforts to reunite him with the child (*see* Social Services Law § 384-b [7] [a], [f]; *see Matter of Stephen S.*, 12 AD3d 1181 [2004]). Petitioner established that its caseworker met with respondent mother on numerous occasions and that, although the father was invited to attend those meetings, he did not attend many of them. Petitioner arranged for the father's visitation with the child, including supervised visitation in respondents' home. Also, as previously noted, petitioner returned the child to respondents' care on two occasions and offered respondents services such as counseling, parenting classes, and daycare for the child. In addition, petitioner offered to assist respondents in applying for public assistance. Petitioner's caseworker met with respondents to explain the medical and dietary requirements of the child before he was returned to their care. Further, petitioner provided a Spanish-speaking interpreter for the father when he had difficulty understanding the caseworker and also arranged for a Spanish-speaking therapist to counsel respondents.

Contrary to the contention of respondents, we conclude that the court properly determined that they failed to plan for the future of the child, despite their visitation with the child and compliance with the services offered by petitioner. " '[T]o plan for the future of the child' shall mean to take such steps as may be necessary to provide an adequate, stable home and parental care for the child" (Social Services Law § 384-b [7] [c]). "At a

minimum, parents must 'take steps to correct the conditions that led to the removal of the child from their home' " (*Matter of Nathaniel T.*, 67 NY2d 838, 840 [1986]; *see Matter of Crystal Q.*, 173 AD2d 912, 913 [1991], *lv denied* 78 NY2d 855 [1991]). The evidence presented at the hearing conducted on the petition established that respondents could not ensure the safety of the child while he was in their care. The child sustained an injury or lost a significant amount of weight each time he was placed in respondents' care for a short period of time. Respondents' attendance at parenting programs and visitation with the child when he was in the care of petitioner does not establish that respondents took the necessary steps to correct the conditions that led to the child's removal from respondents' home (*see Nathaniel T.*, 67 NY2d at 841-842). "[A] parent is required to not only attend [parenting] classes, but to benefit from the services offered and utilize the tools or lessons learned in those classes in order to successfully plan for the child's future" (*Matter of Elijah NN.*, 20 AD3d 728, 730 [2005]). Here, although respondents consented to the prior finding of neglect, they failed to acknowledge responsibility for the child's injuries or medical problems while he was in their care (*see Matter of Jennifer R.*, 29 AD3d 1005, 1006 [2006], *lv denied* 7 NY3d 717 [2006]). Present—Hurlbutt, J.P., Smith, Centra, Green and Pine, JJ.