■ In the Matter of JAMEL RAHEEM B. NASSAU COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; VERNICE B., Appellant. (Proceeding No. 1.) In the Matter of JAMEL B. NASSAU COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; VERNICE B., Appellant. (Proceeding No. 2.) [933 NYS2d 307]—

"In proceedings to terminate parental rights based on permanent neglect, the agency must establish as a threshold matter that it made diligent efforts to encourage and strengthen the parental relationship" (*Matter of Joseph Albert R.*, 2 AD3d 528, 528 [2003]; *see Matter of Sheila G.*, 61 NY2d 368, 380-381 [1984]). However, evidence of diligent efforts on the part of the agency are not required when "[t]he parent has failed for a period of six months to keep the agency apprised of his or her location, provided that the court may consider the particular delays or barriers an incarcerated parent . . . may experience in keeping the agency apprised of his or her location" (Social Services Law § 384-b [7] [e] [i]).

Here, the mother admitted that she had no contact with the Nassau County Department of Social Services (hereinafter the DSS) from sometime in September 2006, until April 2007. Accordingly, the Family Court properly found that, notwithstanding the mother's incarceration during a portion of this period of time, the DSS's obligation to demonstrate diligent efforts was excused, since the whereabouts of the mother were unknown for six months or more, and the mother failed to keep the DSS apprised of her whereabouts (*see* Social Services Law § 384-b [7] [a]; *Matter of Leavon Marvin B.*, 60 AD3d 941 [2009]; *Matter of Kimberly Vanessa J.*, 37 AD3d 185, 186 [2007]).

As to the finding of permanent neglect (*see* Social Services Law § 384-b [7] [c]), "[a]t a minimum, a parent's duty to plan for the future of his or her child requires the parent to correct

the problems that led to the child being removed from the parent's care" (*Matter of Maldrina R.*, 219 AD2d 723, 723 [1995]; *see Matter of Nathaniel T.*, 67 NY2d 838, 840 [1986]; *Matter of Leon RR*, 48 NY2d 117, 125 [1979]; *Matter of Leon G.*, 7 AD3d 524, 525 [2004]).

Here, the child was removed from the mother's care in June 2006 because of the mother's history of drug use. It is undisputed that in September 2006, the mother left, without having completed drug rehabilitation programs at the Family Treatment Court and the Family and Children's Association that she had been attending, and she relapsed into drug use. Ultimately, she was arrested for selling drugs. By failing to complete the rehabilitative services to which she had been referred by the DSS, the mother failed to plan for the child during the period from September 2006 to February 2007 (*see* Social Services Law § 384-b [7] [c]; *Matter of David O.C.*, 57 AD3d 775 [2008]; *Matter of Leon G.*, 7 AD3d at 525).

The evidence supported the Family Court's finding that the mother's plan of obtaining an apartment and finding a job as a chef was, at the time of the finding of neglect, made on May 8, 2009, not "realistic and viable." Based on that finding, and the mother's failure, while incarcerated, to "provide any realistic and feasible alternative to having [the child] remain in foster care until [her earliest] release from prison" (*Matter of Love Russell J.*, 7 AD3d 799, 800 [2004] [internal quotation marks omitted]), clear and convincing evidence supported the Family Court's determination that the mother permanently neglected the child by failing to adequately plan for his future (*see Matter of Baby Girl C.*, 1 AD3d 593 [2003]; *Matter of C. Children*, 253 AD2d 554 [1998]).

The Family Court's determination that it was in the child's best interests to be adopted by the foster mother "is supported by the requisite preponderance of the evidence" (*Matter of Travis Devon B.*, 295 AD2d 205, 205 [2002]). The mother's recent achievements, while laudable, "were insufficient to warrant a suspended judgment, given the absence of any real relationship between [her and the child] and the bond that the [child] ha[d] developed with the competent foster mother," who had been caring for him virtually his entire life (*Matter of C. Children*, 253 AD2d at 555; *see Matter of Keynyha Shante Marie B. [Craig B.]*, 76 AD3d 1063 [2010]; *Matter of Tyria W.*, 41 AD3d 859 [2007]). Under these circumstances, it would not have served the child's best interests to prolong foster care unnecessarily (*see Matter of Angelica W. [Dorothy W.]*, 80 AD3d 772 [2011]; *Matter of Tyria W.*, 41 AD3d at 860; *Matter of Paul Mi-*

*chael G.*, 36 AD3d 541 [2007]). Rivera, J.P., Eng, Belen and Austin, JJ., concur.