■ In the Matter of DARIANA K.C., an Infant. SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; KATHERINE M., Appellant. (Proceeding No. 1.) In the Matter of KAYLA M.C., an Infant. SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; KATHERINE M., Appellant. LISA VEGA et al., Nonparty Respondents. (Proceeding No. 2.) [952 NYS2d 589]—

The subject children came into the custody of the Suffolk County Department of Social Services (hereinafter DSS) after the mother relinquished her then nine-month old daughter, Kayla M.C., to Lisa Vega, an alleged friend of the family whom the mother had never met before, on April 1, 2009, on a railroad platform in Babylon. Kayla was legally temporarily removed from the mother's care on June 18, 2009, and later placed into foster care with Vega and her husband, after DSS certified Vega as a suitable resource. Kayla's then-1½-year-old sister, Dariana K.C., was placed into foster care with DSS on June 24, 2009, although DSS could not locate her until July 8, 2009, because the mother apparently removed Dariana from Suffolk County and brought her to stay with Dariana's paternal family in Maryland, allegedly to avoid DSS.

Dariana died from an aggressive form of brain cancer after entry of the order appealed from. Therefore, the appeal from so much of the order as terminated the mother's parental rights with respect to Dariana, and transferred the custody and guardianship of that child to the Suffolk County Department of Social Services for the purpose of adoption, must be dismissed as academic. However, the adjudication of permanent neglect with respect to Dariana constitutes a permanent and significant stigma which might indirectly affect the mother's status in future proceedings. Accordingly, the appeal from the portion of the order which determined that the mother permanently neglected Dariana is not academic (*see Matter of Niviya K. [Alfonzo M.]*, 89 AD3d 1027, 1027-1028 [2011]).

To establish permanent neglect as a basis for the termination of parental rights, the petitioning agency is required to show by clear and convincing evidence that the parent "failed for a period of either at least one year or fifteen out of the most recent twenty-two months following the date such child came into [its] care . . . substantially and continuously or repeatedly to . . . plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (Social Services Law § 384-b [7] [a]).

Pursuant to Social Services Law § 384-b (7) (c), "to plan for the future of the child" means, "to take such steps as may be necessary to provide an adequate, stable home and parental care for the child within a period of time which is reasonable

under the financial circumstances available to the parent. The plan must be realistic and feasible, and good faith effort shall not, of itself, be determinative."

The mother concedes that DSS established by clear and convincing evidence that it exercised diligent efforts to encourage and strengthen the parental relationship by, inter alia, facilitating the mother's regular visitation with the children, counseling her when needed, and referring the mother to various programs where she could obtain housing, counseling, and training to live independently (*see* Social Services Law § 384-b [7] [a], [f]; *Matter of Star Leslie W.*, 63 NY2d 136, 142 [1984]; *Matter of Ty-Wan Jayden H. [Lashanda Odessa V.]*, 95 AD3d 1324 [2012]).

Contrary to the mother's contention, the Family Court's determination that she permanently neglected the children by failing to plan for their future for a period of one year after they were removed from her care is supported by clear and convincing evidence. Although the evidence showed that the mother made progress by complying with various mandates of the court and developing coping skills, the mother continued to lack insight into the reasons why the children were removed from her care, which prevented her from correcting such problems and reflected her failure to plan for the children's future (*see Matter of Walter D.H. [Zaire L.]*, 91 AD3d 950, 951 [2012]; *Matter of Anthony R. [Juliann A.]*, 90 AD3d 1055, 1056 [2011]; *Matter of Jamel Raheem B. [Vernice B.]*, 89 AD3d 933 [2011]; *Matter of Chyanne H.*, 62 AD3d 876, 877-878 [2009]; *Matter of Darlene L.*, 38 AD3d 552, 555 [2007]).

At a dispositional hearing after a finding of permanent neglect, the best interests of the child are paramount (*see* Social Services Law § 384-b [7] [a], [f]; *Matter of Walter D.H. [Zaire L.]*, 91 AD3d at 951; *Matter of Anthony R. [Juliann A.]*, 90 AD3d at 1056; *Matter of Nicholas S. [Rhonda S.]*, 78 AD3d 841, 842 [2010]; *cf. Matter of Christopher T. [Margarita V.]*, 94 AD3d 900 [2012]). Based on the strong emotional bond between Kayla and the foster parents, one of whom is the person to whom the mother initially surrendered Kayla, and their continuing support of Kayla in all respects since she was a nine-month old infant, the Family Court properly determined that it was in Kayla's best interests to terminate the mother's parental rights and free her for adoption. Angiolillo, J.P., Dickerson, Belen and Miller, JJ., concur.