# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

575
CAF 12-01060
PRESENT: SCUDDER, P.J., SMITH, CENTRA, AND LINDLEY, JJ.

IN THE MATTER OF CAYDEN L.R.
--------------------------------------
JEFFERSON COUNTY DEPARTMENT OF SOCIAL              MEMORANDUM AND ORDER
SERVICES, PETITIONER-RESPONDENT;

MELISSA R., RESPONDENT-APPELLANT.

EMILY KARR-COOK, ELMIRA, FOR RESPONDENT-APPELLANT.

CARACCIOLI & ASSOCIATES, PLLC, WATERTOWN (KEVIN C. CARACCIOLI OF
COUNSEL), FOR PETITIONER-RESPONDENT.

SETH BUCHMAN, ATTORNEY FOR THE CHILD, THREE MILE BAY.

Appeal from an order of the Family Court, Jefferson County
(Richard V. Hunt, J.), entered June 1, 2012 in a proceeding pursuant
to Social Services Law § 384-b. The order, among other things,
terminated respondent's parental rights with respect to the subject
child.

It is hereby ORDERED that the order so appealed from is affirmed
without costs.

Memorandum: In this proceeding pursuant to Social Services Law §
384-b, respondent mother improperly appeals from the fact-finding
order rather than the subsequent order of disposition. Nevertheless,
we exercise our discretion to treat the notice of appeal as valid and
deem the appeal as properly taken from the order of disposition (*see*
CPLR 5520 [c]; *Matter of Anthony M.*, 56 AD3d 1124, 1124, *lv denied* 12
NY3d 702).

Contrary to the contention of the mother, Family Court properly
determined that petitioner made diligent efforts to reunite her with
the child (*see* Social Services Law § 384-b [7] [a], [f]). Among other
things, petitioner arranged for a psychological assessment of the
mother, arranged for therapy sessions for the mother and various
services for the child, and provided the mother with parenting,
budgeting, and nutrition education training. Petitioner also provided
the mother with supervised and unsupervised visits with the child.
Most significantly, petitioner arranged for a child psychologist to
meet with the mother on several occasions in her home to provide
parenting training, and we agree with the court's assessment that this
was "truly a diligent effort" by petitioner to encourage and
strengthen the parent-child relationship.

Contrary to the further contention of the mother, the court properly determined that she failed to plan for the future of the child (*see* Social Services Law § 384-b [7] [a]).  " '[T]o plan for the future of the child' shall mean to take such steps as may be necessary to provide an adequate, stable home and parental care for the child" (§ 384-b [7] [c]).  "At a minimum, parents must 'take steps to correct the conditions that led to the removal of the child from their home' " (*Matter of Nathaniel T.*, 67 NY2d 838, 840).  Here, while the mother participated in the services offered by petitioner and had visitation with the child, the evidence established that she was unable to provide an adequate, stable home for the child and parental care for the child (*see Matter of Abraham C.*, 55 AD3d 1442, 1442-1443, *lv denied* 12 NY3d 701).  While the child psychologist noted that the mother was consistently calm and patient with the child and was able to care for the child for short periods of time, she was unable to provide long-term care for the child.  His testimony was supported by the testimony of the child's teachers and speech therapist, each of whom noted a marked negative change in the child's behavior based on the increased frequency of unsupervised overnight periods that he spent with the mother.  In addition, the evidence established that the mother failed to address the problems that led to the removal of the child from her home (*see Matter of Ja-Nathan F.*, 309 AD2d 1152, 1152).

Finally, petitioner's contention that we should vacate that part of the order granting posttermination visitation is not properly before us inasmuch as petitioner did not cross-appeal from the order (*see Matter of Alexander M.*, 106 AD3d 1524, 1525; *see generally Matter of Carl G. v Oneida County Dept. of Social Servs.*, 24 AD3d 1274, 1276).

All concur except LINDLEY, J., who dissents and votes to reverse in accordance with the following Memorandum:  I respectfully dissent.  I note at the outset that I agree with the majority that we should exercise our discretion to treat the notice of appeal as valid and deem the appeal as properly taken from the order of disposition rather than the fact-finding order (*see* CPLR 5520 [c]; *Matter of Anthony M.*, 56 AD3d 1124, 1124, *lv denied* 12 NY3d 702).  In my view, however, Family Court erred in terminating respondent mother's parental rights based on permanent neglect.  Initially, given that it is undisputed that petitioner misdiagnosed both the mother and the child, I conclude that petitioner failed to prove by "clear and convincing evidence that it made the requisite diligent efforts to encourage and strengthen the mother's relationship with the child" (*Matter of Serenity G. [Orena G.]*, 101 AD3d 1639, 1639-1640; *see* Social Services Law § 384-b [7] [a]).  With respect to the mother, petitioner arranged for a psychological evaluation of her by a psychologist who determined that the mother is mildly mentally retarded.  As it turns out, the mother has a verbal IQ of 77, which, according to the psychiatrist appointed by the court, takes her out of the mildly retarded range of intellectual functioning.  This may explain why petitioner withdrew its initial petition, which sought to terminate the mother's parental rights based on mental retardation.  The withdrawal of that petition appears to be a tacit admission that the mother is not in fact mentally retarded.

Far more important is the fact that the psychologist who examined the mother at petitioner's request failed to diagnose her with bipolar 2. The mother's bipolar condition was not diagnosed until late September 2011, after the mother, on her own volition and initiative, checked herself into the Samaritan Hospital Medical Center, where she was finally seen by a psychiatrist, Dr. Khaled Mohamed. Dr. Mohamed testified at the hearing that, upon evaluating the mother, it was "clear" that she had bipolar disorder. The mother had never previously been diagnosed or treated for bipolar disorder, and she had never before been prescribed a mood stabilizer. Instead, the mother had been treated for depression and was given antidepressants that, according to Dr. Mohamed, have a counterproductive effect on individuals who suffer from bipolar 2. Dr. Mohamed explained at trial that bipolar 2 "[a]ffects everything in life – affects emotion, concentration, sleep, appetite — everything," including the ability to learn.

As the Court of Appeals has stated, to satisfy its statutory duty to exercise diligent efforts to strengthen the parent-child relationship and to reunite the family, the agency petitioning to terminate parental rights "must always determine the particular problems facing a parent with respect to the return of his or her child and make affirmative, repeated, and meaningful efforts to assist the parent in overcoming these handicaps" (*Matter of Sheila G.*, 61 NY2d 368, 385). That is to say, "[t]he agency should mold its diligent efforts to fit the individual circumstances so as to allow the parent to provide for the child's future" (*Matter of Patricia C.*, 63 AD3d 1710, 1711 [internal quotation marks omitted]; *see Matter of Colinia D. [Thomas F.]*, 84 AD3d 1755, 1756).

Here, the mother was not diagnosed with bipolar 2 until five years after the child had been removed from her care, and more than five months after the instant petition had been filed seeking to terminate her parental rights. Thus, during the diligent efforts period from January 2010 to February 2011, the mother was not being properly treated for her mental illness. Under the circumstances, it cannot be said that the services provided by petitioner to the mother were specifically tailored to assist her in overcoming her primary handicap. In fact, the antidepressant treatment provided to the mother actually made her bipolar condition worse.

It is true, as petitioner points out, that petitioner arranged for a child psychologist to provide parental training in the mother's home, which is highly unusual. But that service, like many others provided by petitioner to the mother, was premised on the belief, apparently erroneous, that the mother was mentally retarded, while her real condition remained undiagnosed and untreated. The services provided by petitioner should instead have been tailored to address the mother's mental illness. It may be true, as petitioner points out, that bipolar 2 is often misdiagnosed as depression, but that does not alter the fact that the services provided to the mother by petitioner were inadequate to effectuate a change in the mother's parenting skills.

Petitioner also misdiagnosed the child. Dr. Rubenzahl performed a psychological assessment of the child in February 2010, and diagnosed him with pervasive development disorder, not otherwise specified (PPD-NOS), "which is essentially a mild autistic condition." As a result of that diagnosis, petitioner determined that it should move slowly with respect to providing services to the mother. Dr. Rubenzahl acknowledged at trial, however, that his diagnosis of PPD-NOS was incorrect. Like the misdiagnosis of the mother, the misdiagnosis of the child affected the services provided by petitioner. I thus conclude that petitioner failed to prove by clear and convincing evidence that it made diligent efforts to strengthen the parent-child relationship and to reunite the family, and that the petition should have been dismissed on that basis alone.

In any event, even assuming, arguendo, that petitioner met its burden of proof with respect to diligent efforts, I conclude that it failed to prove by clear and convincing evidence that the mother failed to plan for the child's future. As petitioner acknowledges, the mother availed herself of all the services provided to her and, in fact, even went beyond those services and obtained mental health services on her own. In addition, it cannot be said that the mother failed to correct the problems that led to the child being removed from her care (*see generally Matter of Nathaniel T.*, 67 NY2d 838, 840). According to petitioner, the child was removed because the mother left him with an inappropriate caretaker, namely, the child's father, who was mentally retarded. Since then, the mother has not left the child with anyone, let alone anyone who is an inappropriate caretaker.

Entered: July 19, 2013        Frances E. Cafarell
Clerk of the Court