■ In the Matter of SELVIN ADOLPH F., JR., a Child Alleged to be Permanently Neglected. EDWIN GOULD SERVICES FOR CHILDREN FAMILIES, Appellant; THELMA LYNN F. et al., Respondents. [985 NYS2d 520]—

Order, Family Court, Bronx County (Kelly A. O'Neill Levy, J.), entered on or about November 16, 2012, which dismissed, without prejudice, the petition seeking to terminate respondents' parental rights to the subject child for failure to plan for his future, unanimously reversed, on the law and the facts, without costs, the petition reinstated, a finding of permanent neglect entered against both respondents, and the matter remitted to Family Court for further proceedings.

There is no dispute that the agency has met the threshold requirement in a permanent neglect proceeding of showing it discharged its statutory obligation to exert diligent efforts to encourage and strengthen the parental relationships (*see* Social Services Law § 384-b [7] [a]; *Matter of Jamie M.*, 63 NY2d 388,

---

390 [1984]). However, contrary to the findings by Family Court, there is clear and convincing evidence, the standard of proof required (*see Matter of Michael B.*, 58 NY2d 71, 74 [1983]), that despite the agency's diligence, neither parent has, "for a period of either at least one year or fifteen out of the most recent twenty-two months following the date [the] child came into the care of an authorized agency," shown sufficient planning for the child's future, as described in the Social Services Law, to warrant continuing parental rights (*see* Social Services Law § 384-b [7] [a]; *Matter of Star Leslie W.*, 63 NY2d 136, 140 [1984]).

Planning for the future of the child under the Social Services Law requires that the parent take "necessary [steps] to provide an adequate, stable home and parental care for the child within a period of time which is reasonable"; at the very least, the parent must take steps to "correct the conditions" that resulted in the initial removal of the child from the home (*see Matter of Nathaniel T.*, 67 NY2d 838, 840 [1986] [internal quotation marks omitted]; Social Services Law § 384-b [7] [c]).

Here, the child has not lived with his mother since he was nine months old, in 2000. A finding of neglect was entered against the mother in April 2005; she was directed to undertake mental health treatment. The child was placed in the permanent custody of the father. In October 2006, a neglect petition was filed against both parents. The child had reported that he had been a passenger in the car driven by his father who had been drinking beer, and the car had swerved. On a different occasion, the father left the child unsupervised in the mother's care, although she had not yet received any mental health services. The child was accordingly placed into foster care. For the past few years, the child has lived in a kinship foster home.

The agency designed service plans for both parents, with the goal of providing sufficient skills and services to permit reunification with the child. The mother was referred for individual therapy and psychiatric treatment, and the father was referred for individual outpatient therapy.

On May 7, 2009, the Family Court entered neglect findings against both respondents. The court found child neglect on the part of the mother "by virtue of her failure to complete the necessary services—especially mental health—which were components of the service plan under the prior dockets, for those subject children in foster care."* Child neglect on the part of the father consisted of "misuse of alcohol while the subject

---

* We take judicial notice of our two previous orders affirming the termination of the mother's parental rights to three of her other children based on permanent neglect, due to her "admitted failure to avail herself of mental

child was in his care and custody," and "failure to take appropriate measures of supervision for the child by allowing [him] to be unsupervised in the company of the . . . mother."

New service plans were created which included, for the mother, the need for mental health care, and for the father, the need to attend mental health services and parenting skills classes and to submit to random drug and alcohol tests. The father successfully completed all the programs, and never tested positive for alcohol. However, he was arrested in 2007 and convicted in 2008 for driving while under the influence of alcohol. In January 2009, his son reported that his father, while intoxicated, punched him in the stomach after the boy failed to properly carry out a request. Although the father acknowledged to the caseworker that he had hit his son, he denied his son was hurt. In April 2010, he was again arrested for driving while under the influence of alcohol.

Petitioners filed the instant petition on July 29, 2010 seeking termination of both parents' parental rights. At the termination hearing, Family Court credited the testimony of the mother and the agency that her visits with the child are positive and they have a good relationship, and that she has complied in most ways with the service plans. However, it is a fact that the mother's nine other living children have also been removed from her care over the years and, as argued by petitioners, respondent mother has never undertaken outpatient mental health care, although repeatedly referred and counseled to attend various mental health facilities. This demonstrates an inability to plan for the future and constitutes permanent neglect.

The mother claimed that in about 2008 she had undergone an intake evaluation and was told by the psychiatrist that she did not need mental health services. She testified that she "didn't get the connection" between the requirement for some kind of psychotherapy and the return of her son, since in her mind she had been found not to need services. Even on a cold record, this is not credible, as such an evaluation would have been provided to Family Court and included in the May 2009 findings that found neglect on the part of the mother on the very ground that she had *not* completed mental health services as required "under the prior dockets, for those subject children in foster care." Thus, in 2012, it was error for Family Court to conclude that the agency was required to provide proof that the mother

health services" (*Matter of Jaffa Wally F.*, 60 AD3d 409, 409-410 [1st Dept 2009]) and her refusal to "comply with the court's order to enroll in therapy" (*Matter of Qudra W.*, 297 AD2d 580, 580 [1st Dept 2002], *lv denied* 99 NY2d 506 [2003]).

continued to need mental health services to rebut the mother's uncorroborated, previously rejected, self-serving testimony that in 2008 she was told she did not need any such services; rather, it was the agency's statutory burden to show that it had used diligent efforts to encourage and strengthen the mother's parental relationship with her son. The evidence is ample that the agency repeatedly counseled and also gave referrals to the mother. "In determining whether a parent has planned for the future of the child, the court may consider the failure of the parent to utilize medical, psychiatric, psychological and other social and rehabilitative services and material resources made available to such parent" (Social Services Law § 384-b [7] [c]). The mother's failure to ever obtain mental health services shows a lack of planning for her son's future, and constitutes permanent neglect.

As to the father, Family Court credited the testimony of the agency caseworker and the father that he was fully engaged in numerous activities in the child's life, was a loving parent, and had undertaken and completed all required programs. The court did not address the then-13-year-old child's desire, as related by his attorney at the termination hearing, not to return to either parent's care, with one of the reasons being that "on many occasions," his father drinks when the son is visiting overnight. Instead, based on his ready admission of his two DWI convictions and his understanding of the legal importance of not drinking while driving, Family Court concluded that the father had taken responsibility for the alcohol-related convictions, and had gained insight into and adequately addressed the reasons the child had been removed from his care.

While we are cognizant of the deference to be afforded to the nisi prius court's credibility determinations in a proceeding to terminate parental rights (see Matter of Irene O., 38 NY2d 776, 777 [1975]), here, our reading of the record as it pertains to the father belies the factual findings reached by Family Court. Despite the two DWIs and his required attendance in alcohol abuse programs, the father referred to his drinking as a "little problem." He claimed not to know that refraining from alcohol and not driving while drinking were a part of his service plan or that failing to comply with those conditions would be a barrier to reuniting with his son. Rather, it was his belief that he had complied with every aspect of the service plans, and that his son was not returned to him because the agency personnel had a "personal vendetta" against him.

A parent's refusal or failure to admit to alcohol problems or utilize services to strengthen the parental relationship with the

child warrants finding that the parent failed to make realistic plans for the child's future, thus providing clear and convincing evidence of permanent neglect (*see Matter of Jennie EE.*, 187 AD2d 877 [3d Dept 1992], *lv denied* 81 NY2d 706 [1993]). Even if we were to consider the father's post-petition successful completion of a several-month long alcohol abuse program in 2011 (*see Matter of Star Leslie W.*, 63 NY2d at 147), this does not mitigate the import of his son's statements made in 2012. Clearly, the father does not have insight into how his alcohol abuse has undermined his ability to create and maintain an adequate, stable home, or that it makes him less than a fit parent. Concur—Acosta, J.P., Saxe, Moskowitz and Feinman, JJ.