Matter of Tori-Lynn L. (Troy L.) (2024 NY Slip Op 02440)

Matter of Tori-Lynn L. (Troy L.)

2024 NY Slip Op 02440

Decided on May 3, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 3, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., BANNISTER, MONTOUR, NOWAK, AND KEANE, JJ.

258 CAF 23-00038

[*1]IN THE MATTER OF TORI-LYNN L. AND LACY-MARIE L. ONONDAGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, PETITIONER-RESPONDENT; TROY L., RESPONDENT-APPELLANT. 

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (THOMAS R. BABILON OF COUNSEL), FOR RESPONDENT-APPELLANT. 
ROBERT A. DURR, COUNTY ATTORNEY, SYRACUSE (ERIN WELCH FAIR OF COUNSEL), FOR PETITIONER-RESPONDENT. 
SUSAN B. MARRIS, MANLIUS, ATTORNEY FOR THE CHILDREN. 

 Appeal from an order of the Family Court, Onondaga County (Julie A. Cerio, J.), entered December 2, 2022, in a proceeding pursuant to Social Services Law § 384-b. The order, inter alia, terminated respondent's parental rights with respect to the subject children. 
It is hereby ORDERED that the order so appealed from is affirmed without costs.
Memorandum: In this proceeding pursuant to Family Court Act article 6 and Social Services Law § 384-b, respondent father appeals from an order of fact-finding and disposition that, inter alia, adjudicated the subject children to be permanently neglected by the father and terminated the father's parental rights. We affirm.
The father and non-appellant mother are the biological parents of the subject children, who are twin girls. In early July 2018—when the children were approximately three months old—the police responded to a domestic violence report at the residence where the father and the mother had been staying with the children. Upon a safety assessment by petitioner the following day, the mother admitted that the father had subjected her to physical domestic violence, and a representative for petitioner observed that the father's bedroom contained, among other things, a dirty portable crib that contained hypodermic syringes, one of which contained blood. During the investigation, the mother admitted to using heroin just weeks prior to the children's birth and to using cocaine after the children were born, and the father admitted to using cocaine and "molly" during the weekend of the domestic violence incident.
The children were immediately removed from the biological parents' care and thereafter placed with foster parents, with whom they have since remained. Petitioner filed a neglect petition and, upon the admissions of the biological parents, Family Court adjudicated the children neglected in October 2018. The father was ordered to cooperate and make progress in parenting classes, family counseling, and domestic violence counseling. In addition, the court ordered that the father obtain psychological and substance abuse evaluations and follow the recommendations thereof, including any inpatient care. Among other things, the father was also required to submit to random drug screens and avoid any consumption of alcohol, illegal substances, or non-prescribed medications in the presence of the children. The father was permitted to have contact with the children supervised by a person deemed appropriate by petitioner.
The children remained in foster care for years as periodic permanency hearings continued and, eventually, petitioner filed a petition seeking to terminate the parental rights of the biological parents. Petitioner alleged that the father permanently neglected the children on the [*2]ground that, notwithstanding petitioner's diligent efforts, the father failed for a period of at least one year—specifically December 1, 2020 to December 22, 2021—substantially and continuously or repeatedly to plan for the future of the children, although physically and financially able to do so. Petitioner alleged in particular that the father disclosed to a psychiatrist in June 2021 that he had been hearing voices telling him to sexually abuse the children, and that he failed to comply with the service plan and failed to ameliorate the problems preventing the safe return of the children to his care.
Following a fact-finding hearing during which petitioner presented, inter alia, the testimony of its caseworker and the father's psychiatrist, the court rendered a bench decision in which it determined that, despite petitioner's diligent efforts, the father had failed to appropriately plan for the future of the children by taking steps necessary to provide an adequate, stable home and parental care. The court further determined after a subsequent dispositional hearing that terminating the father's parental rights and freeing the children for adoption was in the best interests of the children.
Preliminarily, contrary to the assertion of the Attorney for the Children, we conclude on this record that the father timely filed his notice of appeal (see Family Ct Act §§ 1113, 1115). On the merits, the father contends that the court erred in determining that petitioner met its burden at the fact-finding hearing of establishing that he permanently neglected the children. We reject that contention.
"An authorized agency that brings a proceeding to terminate parental rights based upon permanent neglect bears the burden of establishing [by clear and convincing evidence] that it has made 'diligent efforts to encourage and strengthen the parental relationship' " (Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d 422, 429 [2012], quoting Social Services Law § 384-b [7] [a]; see Matter of Sheila G., 61 NY2d 368, 373, 380-381 [1984]). "Once diligent efforts have been established, the agency must prove [by clear and convincing evidence] that the parent has permanently neglected the child" (Hailey ZZ., 19 NY3d at 429) by, as relevant here, "fail[ing] for a period of . . . at least one year . . . substantially and continuously or repeatedly to . . . plan for the future of the child, although physically and financially able to do so" (§ 384-b [7] [a]). "[T]he planning requirement contemplates that the parent shall take such steps as are necessary to provide a home that is adequate and stable, under the financial circumstances existing, within a reasonable period of time. Good faith alone is not enough: the plan must be realistic and feasible" (Matter of Star Leslie W., 63 NY2d 136, 143 [1984]; see § 384-b [7] [c]). "In determining whether a parent has planned for the future of the child, the court may consider the failure of the parent to utilize medical, psychiatric, psychological and other social and rehabilitative services and material resources made available to such parent" (§ 384-b [7] [c]). "At a minimum, [the] parent[ ] must 'take steps to correct the conditions that led to the removal of the child from their home . . . [T]he planning requirement also obligates [the] parent[ ] to project a future course of action, taking into account considerations of how the child will be supported financially, physically and emotionally' " (Matter of Nathaniel T., 67 NY2d 838, 840 [1986]).
Here, contrary to the father's contention, we conclude that the court did not err in determining that petitioner established by clear and convincing evidence that, despite its diligent efforts, the father failed to adequately plan for the return of the children (see Social Services Law § 384-b [7] [a]; Matter of Steven D., Jr. [Steven D., Sr.], 188 AD3d 1770, 1771 [4th Dept 2020], lv denied 36 NY3d 908 [2021]). The record establishes that, "[a]lthough [the father] participated in some parts of the [service] program, [he] failed to address or mitigate on a consistent basis the problems preventing the return of the child[ren] and thus failed to plan for the future of the child[ren]" (Matter of Rasyn W., 254 AD2d 827, 827 [4th Dept 1998]). While the father is correct that, prior to June 2021, petitioner had considered the father to be in compliance with the service plan such that the children were scheduled to return to the biological parents that month, petitioner's excusable misperception of the father's progress at that point was, through no fault of its own, as the court properly held, based on the father's active concealment that he was experiencing auditory hallucinations—i.e., hearing voices—that had been instructing him to sexually abuse the children (see generally Matter of Keith UU., 256 AD2d 673, 674-675 [3d Dept 1998], lv denied 93 NY2d 801 [1999]). Indeed, the caseworker testified that petitioner received an additional CPS report in June 2021 informing it that the father had disclosed the auditory hallucinations to his psychiatrist. The caseworker specifically explained that, prior to [*3]the father's disclosure, petitioner was unaware of the auditory hallucinations issue, and the father would not have been considered compliant with treatment if he was being dishonest with his mental health provider.
Following the father's disclosure, the caseworker asked him to enroll in a counseling program that treats people with sexualized behaviors. The father, however, did not enroll in that program prior to the end of the statutory period alleged in the petition. Additionally, the father neither completed nor made substantial progress in a mental health treatment program and, after June 2021, he failed to complete a domestic violence education program. During subsequent supervised visitations, the children would often run away from the father and would refer to him as "scary daddy." The caseworker had never used that phrase in the presence of the children, nor was there any indication that the foster parents had spoken to the children about the voices that the father was hearing. Visitation with the father was later terminated in October 2021.
Based on the foregoing, the record establishes both that petitioner's perception of the progress that the father had made prior to June 2021 was due to his own non-disclosure of dangerous delusional thinking regarding the children, and that the father failed to sufficiently comply with the service plan for the remainder of the alleged one-year period (see Matter of Natalee F. [Eric F.], 194 AD3d 1397, 1398 [4th Dept 2021], lv denied 37 NY3d 911 [2021]; Matter of Dakota S., 43 AD3d 1414, 1415 [4th Dept 2007]). We thus conclude that, under the circumstances of this case, "the finding of permanent neglect [is not] undermined by the evidence that [petitioner] took steps to arrange for [the] discharge of the child[ren] to [the father], which never materialized due to" the father's newly disclosed and unaddressed auditory hallucinations that were telling him to sexually abuse the children (Matter of Wilfredo A.M., 56 AD3d 338, 338 [1st Dept 2008]).
We further conclude that a different result is not warranted even if the court erred in admitting the full testimony of the psychiatrist on the ground that the father's confidential communications remained subject to physician-client privilege (see CPLR 4504; see generally People v Rivera, 25 NY3d 256, 260-265 [2015]). The psychiatrist, as a mental health professional, was required to report that he had reasonable cause to suspect that the children were maltreated based on the father's disclosure that he was hearing voices instructing him to sexually abuse the children (see Social Services Law § 413 [1] [a]; see also § 412 [2] [a]; Family Ct Act § 1012 [f] [i]). The psychiatrist made such a report by immediately placing a telephone call to the caseworker (see Social Services Law § 415). The caseworker testified about receiving that report in June 2021 and the actions that petitioner took in response thereto (see generally Matter of Samaj B. [Towanda H.-B.—Wade B.], 98 AD3d 1312, 1313-1314 [4th Dept 2012]). The caseworker's testimony alone is sufficient to establish that petitioner's initial position approving the return of the children was based on incomplete information about the father's mental health and the children's safety. As the caseworker's testimony establishes, had the father promptly disclosed his mental health issue while he was under the supervision of petitioner, there would never have been a recommendation to return the children to his care and, having failed to deal with that significant child safety issue, the father would not have been considered compliant with his obligation to plan for the safe return of the children. Inasmuch as the father thereafter failed to comply with the requested services, including sexualized behavior counseling, the record establishes that the father "did not successfully address or gain insight into the problems that . . . continued to prevent the child[ren's] safe return" (Matter of Giovanni K., 62 AD3d 1242, 1243 [4th Dept 2009], lv denied 12 NY3d 715 [2009]).
Finally, even assuming, arguendo, that the court erred in admitting in evidence the father's hospital records and in considering one exhibit that had not been properly received into evidence, we conclude that any error is harmless because "the result reached herein would have been the same even had such record[s], or portions thereof, been excluded [or not considered]" (Matter of Cyle F. [Alexander F.], 155 AD3d 1626, 1626-1627 [4th Dept 2017], lv denied 30 NY3d 911 [2018] [internal quotation marks omitted]; see Matter of Carmela H. [Danielle F.], 185 AD3d 1460, 1461 [4th Dept 2020], lv denied 35 NY3d 915 [2020]).
All concur except Montour and Nowak, JJ., who dissent and vote to reverse in accordance with the following memorandum: We agree with the majority that petitioner met its burden of establishing that respondent father failed to plan for the children's future from April 2021—when the father began hearing voices but failed to disclose it—through December 2021. [*4]However, inasmuch as petitioner failed to meet its burden of establishing by clear and convincing evidence that the father failed to plan for the children's future for one full year (see Matter of Lisa Ann U., 52 NY2d 1055, 1057 [1981]; Matter of Tai-Gi K.Q.-N.B. [Nadine B.], 179 AD3d 1056, 1057 [2d Dept 2020]; see also Matter of Winstoniya D. [Tammi G.], 123 AD3d 705, 706-707 [2d Dept 2014]), we respectfully dissent.
To that end, the only evidence of a failure to plan for the children's future from December 2020 to April 2021 was petitioner's exhibit 5, a medical record that referenced the father's admission to continued use of synthetic marihuana. However, that exhibit was withdrawn by petitioner as not properly authenticated and was thereafter never entered into evidence or placed into the record. Inasmuch as the record lacks other admissible evidence that the father failed to plan for the children's future from December 2020 to April 2021, Family Court's improper reliance upon facts outside the record is not harmless (cf. Matter of Cynthia C., 234 AD2d 929, 929 [4th Dept 1996]), and petitioner failed to meet its burden by clear and convincing evidence (see generally Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d 422, 429 [2012]). Therefore, we would reverse the order and dismiss the petition against the father.
Entered: May 3, 2024
Ann Dillon Flynn
Clerk of the Court